CASE 13—PETITION ORDINARY—FEBRUARY 15.

2du 247
108 524
2du 247
e109 763

# Murphy vs. Hubble.

### APPEAL FROM LINCOLN CIRCUIT COURT.

1. M. agreed that if H. would sign a note, payable to him, as surety for L., he would procure the signature of G. as a co-surety. H. signed and delivered the note to M., who failed to obtain the signature of G., and L. became insolvent. *Held*—That, although such an agreement would not impair the obligatory force of the note, nor bar M.'s right of action on it, yet H. might rely on a breach of the agreement as a counter-claim, and recover whatever damage he had sustained.

2. Although a pleading may be defective, yet if the necessary allegations may be implied from the pleading in connection with the instructions and verdict, the apparent defect will not be ground of reversal.

3. Where the infant sues by guardian or next friend, the latter may testify for the plaintiff; but not where the suit is brought in the name of the guardian on a note executed to him. (*Civil Code, sec. 54.*)

H. T. HARRIS, for appellant, cited *Civil Code, sec.* 54.

DURHAM & DUNLAP for appellee.

CHIEF JUSTICE MARSHALL DELIVERED THE OPINION OF THE COURT:

This case was formerly before the court on the appeal of Hubble, against whom Murphy had obtained a judgment on a note in which Hubble was the surety of Lyon. The opinion of the court reversing the judgment is reported in 1st Duvall's Kentucky Reports, page 278. The judgment was reversed for the omission to credit or deduct a small sum, which the plaintiff had admitted to be usury, embraced in the note. But, as the opinion states, Hubble pleaded, in substance, that he executed the note upon the promise, assurance, and agreement of the plaintiff, that he would also procure the signature of one Goode thereto, which he had not done, &c. Wherefore, he says said note is not binding upon him, &c.; and the important question then presented, was as to the sufficiency of the matter thus pleaded in bar.

The court decided in effect, that, whether the plea was regarded as relying on the fact that the plaintiff had agreed that the note should not be obligatory on Hubble unless he;

the plaintiff, should procure the signature of Goode, or on the fact that the note was delivered by Hubble to the plaintiff on the same condition, it could not, in either aspect, bar the action; because, in the first aspect, a parol agreement could not destroy the obligatory force of the written note, and because, in the other aspect, a note or bond cannot be delivered by the obligor to the obligee as an *escrow*. But whether or not the plaintiff's failure to procure Goode's signature might not, with proper averments, have entitled the defendant to recover damages upon a counter-claim, the court declines to decide, "because the defendant does not allege that he sustained any damage by reason of said failure," which was relied on merely as a defense to the action.

After the return of the cause to the circuit court, Hubble filed an amended answer and counter-claim, in which, after a statement importing an agreement between plaintiff and himself that plaintiff would procure the signature of Goode as co-surety, and that the note was not to be binding on Hubble unless this was done, and that plaintiff had not procured said signature, it is further stated, among other things, that Lyon, the principal obligor, had become and is insolvent, and that Goode was solvent at the date of the note and is still solvent, and that, by reason of plaintiff's failure to procure Goode's signature, the defendant has sustained damage to the amount of $——, &c.

The plaintiff's objection to the filing of this answer, and his demurrer to it when filed, having been both overruled, to which ruling he excepted, he filed a reply, denying the alleged agreement, and denying that Hubble had sustained any damage from his failure to perform it, or any other agreement, &c.

Upon the issues thus made on the counter-claim the parties went to trial, there being, according to the former opinion of this court, no defense to the action on the note. The plaintiff, however, asked for instructions which related exclusively to his right to recover on the note. For this reason, as well as because a verdict and judgment were rendered against Hubble for the whole amount of the note (except the small amount

of usury before noticed), the action of the court in granting or refusing these instructions will not be stated.

On the motion of Hubble, the court instructed the jury to the effect, that, " if the note was signed by Hubble as surety of Lyon and left with plaintiff, with an understanding and agreement that he was to procure the name of L. C. Goode as co-surety with defendant, Hubble, before the note was to be obligatory on defendant, and he failed to procure said name, the plaintiff is responsible to the defendant for` any damages he may have sustained by reason of said failure; and the jury, in arriving at the damages, may take into consideration the solvency of Goode and the insolvency of Lyon."

Under this instruction, and with evidence before them which fully justified the finding of the fact hypothetically submitted in favor of Hubble, the jury found for the plaintiff the amount of the note less the sum of usury which had been ascertained to be embraced in it, and found for the defendant, Hubble, on his counter-claim, one half of that amount; and a judgment for each party was rendered accordingly.

As no complaint is or can be made of the verdict and judgment for the plaintiff, rendered in strict conformity with the former opinion of this court, the only questions now to be decided arise in the proceedings on the counter-claim. The counsel for Murphy seem indeed to have regarded the question as to the sufficiency of the counter-claim as substantially identical with that as to the sufficiency of the defense in bar founded upon the same facts; and in the grounds of dumurrer to the counter-claim, in the instructions asked for on the trial, and in the argument presented in this court for the appellant, the same principles are appealed to as invalidating the counter-claim that had already been held fatal to the plea by which it was attempted to bar the action.

But although it has been decided in numerous cases, and in this case when formerly here, that the obligatory effect of a note or bond cannot be destroyed (nor impaired) by a cotemporaneous parol agreement between obligor and obligee, relating to and purporting to restrain its obligation, and that such note or bond delivered by the obligor to the obligee cannot be

made an *escrow* by a parol agreement between them made at the time of delivery, that it shall not be obligatory unless some specified act be done by the obligee; it does not follow that such an agreement, and especially if it comprise an undertaking by the obligee to procure another surety, must, because it is ineffectual for certain purposes, and even for that for which it appears to have been primarily designed, therefore be deemed utterly invalid and ineffectual for all purposes.

The law will not enforce such an agreement for the attainment of its direct and immediate or expressed object of changing the terms or legal effect of a written instrument which is the act and deed of the party who seeks enforcement, or of defeating the legal effect of the delivery by which, according to law, it has become his act and deed.    The agreement, therefore, cannot be specifically enforced upon or against the instrument to which it relates, and which remains obligatory, notwithstanding the agreement.. But although to this extent unenforceable, it is not prohibited by law.  It is not illegal, but merely insufficient in its form to operate coercively in the particular manner designated; and the obligee in the bond might observe and give effect to it without any violation of law or public policy.

. If such agreement be founded upon a legal and sufficient consideration: for instance, if it be made as the inducement to one of the parties to become bound to the other as surety for his debtor (a third person) in a new obligation, whereby his responsibility is created or prolonged, and if actual damage accrue to the party thus induced, in consequence of the failure of the creditor to perform his part of the agreement by procuring the additional surety, we do not perceive nor admit that the incompetency of the agreement to impair the force of the instrument executed by the surety should deprive him of all remedy for redress of the injury he sustains by the non-performance of the obligee's undertaking, by the performance of which the responsibility upon the note would have been divided between two, and his own loss would have been reduced one half.

If it be admitted that so much of the supposed agreement as provides that, in a certain event, the note shall not be obligatory, would be void, it would be so only because the law made the note obligatory on Hubble by his delivery of it to the obligee, whether the event—that is, the procuring of an additional surety—occurred or not. But the law does not prevent nor interfere with the performance of that act, viz: the undertaking to procure the signature of Goode. The responsibility assumed in executing the note was a sufficient and lawful consideration to make the undertaking binding; and although the agreement designated, as the consequence of non-performance, or as a means of enforcing performance, what the law will not enforce, and the stipulation for which may be deemed void or impossible, there still remains the valid and practicable undertaking to procure the name of Goode. The failure to perform this undertaking was an injury to Hubble, who, for the consequent damage to him of being compelled to pay the whole debt of an insolvent principal, when, if the undertaking had been performed, he would have had to pay but half or would have been secure of contribution of one half from Goode if he paid the whole, is, in our opinion, entitled to a remedy.

It cannot be doubted, and will scarcely be denied, that the obligee in a note or bond, who, by a verbal promise to procure an additional surety, or to furnish other indemnity, induces an individual to become bound as surety in the note or bond of his debtor, is himself legally bound by his undertaking, and responsible to the promisee for the injury and damage which may ensue to him from a breach of the promisee. It would be utterly unreasonable to suppose that such a promise would be invalidated, or the remedy for its breach lost or merged, because there was also a promise that the note should not be obligatory on the promisee, unless, or until, the additional surety should be procured by the creditor. Nor does the assertion and recovery of a claim of damages for the breach of an undertaking to procure an additional surety, though the pleading should set out the promise that the note should not be obligatory unless, &c., imply any con-

tradiction of the terms of the note, or any attempt to deny or impair its obligatory force. On the contrary, the assertion of the claim to damages for failing to procure another surety implies an admission that the claimant is bound by the note. This is clearly demonstrated by the course and final disposition of this case, after it went back from this court—when no defense was made to the action on the note, and a judgment was rendered on it against Hubble and in his favor on the counter-claim.

On the whole, therefore, our only difficulty in sustaining the counter-claim arises from the vagueness and want of particularity of the pleading in setting out the agreement or undertaking and the cause of action. But as the pleading bases the claim of damages expressly upon the failure of the plaintiff to procure the signature of Goode, and as it states that "it was the agreement and understanding that the note should not be obligatory on the defendant unless the plaintiff procured the signature of Goode," these averments fairly imply that the plaintiff agreed or promised, when the note was signed by the defendant, that he would procure that signature; and as the verdict, compared with the instruction, establishes the facts as above implied from the pleading, it thus supplies or cures the defective or imperfect statement of them, if it should be deemed defective without such aid. Then as the pleading, thus aided, shows that, at the time of the execution of the note by Hubble, the plaintiff undertook to procure the signature of Goode, and even promised that the note should not be obligatory unless or until he had procured it, the fact that a promise so obviously made for the benefit and protection of Hubble as a surety, and at the very time of his signing the note, was made and operated as an inducement for him to sign it, is, in the very nature of the thing, so evident, that we think it should be considered as implied and virtually included in the statement of the other facts referred to.

Although, therefore, the pleading would have been more complete if it had expressly stated that the promise or agreement of the plaintiff to procure Goode's signature was made

and operated as an inducement for defendant himself to sign, we are of opinion, that, under the liberal construction of pleadings required by the Civil Code, section 146, and which has just been applied in this case, the pleading should, notwithstanding the omission, be deemed sufficient to sustain the judgment rendered on a verdict authorized by the evidence. If, on any of the objections to the answer, the demurrer to it might have been sustained, which is not decided, they do not furnish ground for reversal of a judgment on a verdict; and there was no abuse of discretion in permitting the answer to be filed.

With regard to the alleged error of the court in refusing to permit J. S. Murphy, the plaintiff, to testify for the plaintiff, it is sufficient to say—1st. That the 54th section of the Civil Code authorizes the guardian or next friend to testify in those cases only in which the infant sues by guardian or next friend, and has no application to this case, in which the suit is brought in the name of Murphy, styling himself "guardian, &c.," and on a note executed to him under the same style; and, 2d. That the fact which he was offered to testify to, viz: that there was no agreement with Hubble, when he signed the note, that Murphy, the plaintiff, would procure the signature of another surety, &c., was not issue in the action upon the note, and was wholly irrelevant in that action; and that it was material and in issue only in the matter of Hubble's counter-claim, founded on such alleged agreement, which, if made, was binding upon Murphy personally, and not upon his ward. Murphy, therefore, was personally and alone interested in defeating the counter-claim, the establishment of which was to impose upon him a heavy liability, as it, in fact, did. He had, therefore, an interest in the issue on which he offered to testify which was not, and could not, be released by his former ward, and which rendered him wholly incompetent.

There was, therefore, no error in refusing to let him testify. Wherefore, perceiving no substantial error in the record, the judgment is *affirmed*.