CASE 26.—ACTION BY J. I. CASE THRESHING MACHINE COM-
PANY AGAINST H. M. BARNES AND OTHERS.—
March 24.

# J. I. Case Threshing Machine Co. v. Barnes, &c.

Appeal from Wayne Circuit Court.

M. L. JARVIS, Circuit Judge.

Judgment for defendants, plaintiff appeals.—Affirmed.

1. Trial—Instructions—Theories of Case.—While, generally, it is proper to give instructions presenting the theory of the case advanced by the pleadings of each party, yet where, in an action based on a sale having taken place, the defense was an agreement by which the contract of sale never went into effect, and the jury were instructed to find for plaintiff unless said agreement was entered into, it was not necessary to give instructions presenting plaintiff's contention in respect to the binding force and effect of the contract.

2. Evidence—Parol Evidence—Varying Contract.—An agreement on which a written contract of purchase of a machine was made, that the contract was not to become effective unless on a preliminary test the machine should do a certain work, does not vary the contract, and so may be shown by parol.

3. Sales—Contract—Construction—Conditions.—A contract of sale of a machine and notes for the purchase price, executed and delivered in escrow on an agreement that they should not go into effect unless on a preliminary test the machine should do certain work, did not become operative; the machine failing on the test to do the work.

4. Escrows—Delivery to Agent.—There is a valid delivery in escrow of a contract of purchase of a machine and notes for purchase price, where delivered on an agreement that they shall not go into effect unless on a preliminary test the machine shall do certain work, though the delivery is to the seller's agent; he for purposes of the escrow being the buyer's agent.

HARRISON & HARRISON and O. H. WADDLE & SON for appellees.

J. I. Case Threshing Machine Co. v. Barnes, &c.

### POINTS AND AUTHORITIES CITED.

1. Although a suit has been properly brought in equity it should be transferred and tried on the ordinary docket when the common law issues settles the equitable one, and in such cases either party has the constitutional right of a jury trial, whose finding under proper instructions binds the court the same as in cases brought at common law. (Carder v. Weisenberg, 95 Ky. 135; Hill v. Phillips, 87 Ky. 169; Meek v. McCall, 80 Ky. 379; Wisdom, &c. v. The Nichols & Shepnerd Co., 97 S. W. 19.)

2. If a motion to transfer from the equity to the ordinary docket is made by either party within a reasonable time after the suit is brought and before any preparation to try the case in equity, the transfer of the legal issues must be made, and if the legal issues are the controlling ones the finding of the jury under proper instructions is conclusive. (Newman on Pleading and Practice, Secs. 98 and 100; Chenault v. Eastern Kentucky T. & L. Co., 26 Rep. 1078; Kennedy & Co. v. Anderson, 26 Rep. 367.)

3. To constitute a contract the minds of the contracting parties must meet and a full agreement understandingly entered into. To constitute a sale of personal property there must not only be a meeting of the minds of the parties to the contract but an actual delivery or an agreement to deliver to the purchaser the property as his, and he must agree to accept it as such. As none of these elements are found in the transaction in contest in this case, there was no consummated bargain and sale, and appellees are therefore not liable for the purchase price of the property in contest.

4. A deposit of papers in escrow usually signifies their delivery to a stranger to the parties concerned, but the principles of law governing such transactions do not apply except in cases where conditional sales are made, and such principles can not govern in this case for the reason that no sale, conditional or otherwise, was ever made, and if it is to be considered as made the papers in contest were to be kept by a party who was a sufficient stranger to the transaction as to put the papers in escrow with him, and such papers having been surreptitiously obtained by the obligee, he can not specifically enforce the contract to which they refer.

5. While the transaction in contest between the parties is saturated with the fraud of appellant's agent from beginning to end, the question of the fraud in the transaction is not so much the controlling feature, as the question that no sale was actually consummated between the parties, which is now sought to be specifically enforced by the appellant.

6. A fair and impartial trial having been had in the court below, and the ends of substantial justice having been fully met in that court, its judgment should be affirmed.

C. C. BAGBY, attorney for appellant.

STONE, WALLACE and JOSEPH BERTRAM of Counsel.

J. I. Case Threshing Machine Co. v. Barnes, &c.

## AUTHORITIES CITED.

Wisdom et al., v. Nichols & Sheppard, 97 S. W. 19; Blackstone's Commentaries, Lewis Edition, Book 2, p. 307; Foley v. Cowgill, 5 Blackf., 18; Graves v. Tucker, 10 Smedes & Marsh, 9; Lawton v. Sager, 11 Barber, S. C., 349; Jordon v. Pollock, 14 Geo., 145; Daniel on Negotiable Instruments, Fourth Edition, Vol. 1, Sec. 855; 16 Cyc., page 573; Wight v. Shelby R. Company, 16 B. Monroe, 4; Dils v. Pikeville Bank, 109 Ky., 757; Wood v. Kendall, 30 Ky. (7 J. J. Marshall, 212.); Millett v. Parker, Second Metcalfe, 608; Hubble v. Murphy, 1 Duvall, 278; Phoenix Insurance Company vs. Adams, Trustee, 82 Law Rep., 532; Parrish v. Steadman, 102 Ala., 615; Duncan v. Pope, 47 Georgia, 445; Clann v. Machine Company, 118 Ind., 372; Stewart v. Anderson, 59 Ind., 375; Madison, &c.. Company v. Stevens, 10 Ind., 1; 84 Me., 340; 17 L. R. A., 511; 41 N. J., 403; 49 N. Y., 107; 5 N. Y., 229; 129 N C., 325; 16 Vt., 530; Murray v. Kimball, 10 Ind. App., 141; 41 N. J. L., 403; 85 Me., 242; 13 L. R. A., 714; Ran v. Cook, 172 Ill., 302; Clanin v. Esterly Harvest Machine Company, 118 Indiana, 372; Page on Contracts, Vol. 2, Sec. 1194; Gordon v. Niemann, 118 N. Y., 152; Macklem v. Fales. 130 Mich., 66; Page on Contracts, Vol. 2, Sec. 1195; Page on Contracts, Vol. 2, Sec. 1210; Lunsford v. Malby, 101 Georgia, 39; Hauck v. Wright, Miss. 23, No., 422; Hanrahan v. Association, 66 N. J. L., 80; Stanton v. R. R., 59 Conn., 272; 21 American State Reports, 110; Chancellor Kent in Stevens v. Cooper, 1 John Ch., 425; Dale v. Pope, 4 Litt., 166; Jaudes v. Fisher, 5 Ky. Law Rep., 769; Marshall v. Cox, 7 J. J. Marshall, 133; Wight v. Shelby R. Co., 16 B. Monroe, 4; Ellis v. Griggsby, 5 Ky. Law Rep., 854; Rudy's Adm'x v. Shelbyville & L. Turnpike Road Co., 18 Ky. Law Rep., 180; Gathright v. Oil City Land & Improvement Co., 21 Ky. Law Rep., 1657; Dr. Shoop Family Medicine Co. v. J. A. Mizell & Co., 62 S. E. (N. C.), 511; Clark & Skyles on the Law of Agency, Sec. 63 and numerous cases cited thereunder; 3 Elliot on Evidence, Sec. 1625; 1 Clark & Skyles on the Law of Agency, 67 B.; Kenon v. Burrell, 79 N. E. (Mass.), 780; Kyte v. Commercial Union Assurance Co., 144 Mass., 43; Porter v. U. S. Insurance Co., 160 Mass., 153; Equitable Mfg. Co. v. Bigger, 121 Georgia, 381; 49 S. E. 271; McCormack Mch. Com. v. Allison, 116 Georgia, 445; 42 S. E., 778; Ferne v. Easterly, 36 Kansas, 539, 13 Pac., 824; Minnesota T. M. Co. v. Lincoln, 61 N. W. (N. D.), 80; Larson v. Minn. Thresher Co.. 99 N. W. (Minn.), 623; Aultman & Co. v. Weir, 74 Pac. (Kansas), 227; Metropolitan, &c., Co. v. Law, 112 N. Y. Supp., 1059; Trapp v. New Bordsall Co., 109 Wisconsin, 543; Dunham v. Sammon, 130 Wisconsin, 164; 109 N. W., 559; Waupaca, &c., Co. v. Tmer & L. Co., 112 Wis., 469; Mateson v. Rice, 116 Wis., 328; 92 N. W., 1109; 17 Cyc., 642.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

On July 10, 1905, the appellant company sold to the appellees a threshing outfit, consisting of an engine and separator, for $1,863. For this sum the appellees

executed three notes due, respectively, in September, 1905, and August and September, 1906. As security for the payment of the notes, the appellees on the same day executed and acknowledged before the proper officer a mortgage upon the machinery purchased. When sued upon the notes, the appellees filed an answer and counterclaim setting up various defenses. In one paragraph they averred, in substance: That the agent of the company who negotiated the sale agreed with them that he would remove the machinery to a place where it could be tested on the day the notes were executed, and further agreed that, as they were at a place convenient for the execution of the notes and mortgage, they should be then executed and taken possession of by the agent to be held by him, and in the event the machinery fulfilled the representations made by the agent, the notes and mortgage were to be delivered to the company and become binding upon the purchasers; but, if the machinery failed in the test to do the work it was represented it would do, then and in that event the notes and mortgage were to become null and void and not binding upon the purchasers. That in pursuance of this agreement they did make a test, and found that the machinery was not of the character and quality represented and would not do the work it was guaranteed to do, and upon making this discovery they at once notified the agent that they would not accept the machinery, and demanded the return and cancellation of the notes and mortgage and return to the local agent of the company the machinery. They further averred that the agent to whose keeping the notes and mortgage had been committed without their knowledge and consent deliv-

ered the same to the company in violation of his agreement.

In a reply all the allegations of the answer were denied, and it was averred that the agent had no authority to make any agreements or representations concerning the machinery or the work it would per- form, and that the entire contract between the parties was in a writing, which provided in part that "the machinery is purchased upon and subject to the following mutual and interdependent conditions, and no other, viz.: It is warranted to be made of good material and durable, with good care to do as good work under same conditions as any made in the United States of equal size, and rate and capacity, if properly operated by competent persons, with sufficient steam or horse power, and the printed rules and directions of the manufacturers intelligently followed. If by so doing after trial of ten days by the purchaser said machine shall fail to fulfill the warranty, written notice thereof shall at once be given to J. I. Case Threshing Machine Company, at Racine, Wis., and also to the agent through whom received, stating in what parts and wherein it fails to fulfill the warranty, and reasonable time shall be given to said company to send a competent person to remove the difficulty, the purchaser rendering necessary and friendly assistance; said company reserving the right to replace any defective part or parts; and if then the machinery cannot be made to fulfill the warranty the part that fails is to be returned by the purchaser free of charge to the place where received, and the company notified thereof; and at the company's option another substituted therefor that shall fill the warranty, all the notes and money for such part imme-

diately returned and the contract rescinded to that extent and no further claim made on the company, Failure so to make such trial or give such notice in any respect shall be conclusive evidence of due fulfillment of warranty on the part of said company, and that the machinery is satisfactory to the purchasers, and the company hereby released from all liability under the warranty." This contract also contains a stipulation that: "No person has any authority to waive, alter or enlarge this contract or to make any new or substitute or different contract, representation or warranty." As a part of its reply, and in connection with the conditions contained in this contract, the company averred that it was at all times able, ready, and willing to fully satisfy the conditions of the contract, but that through no fault on its part the purchasers declined to accept the terms of the contract, and therefore could not defeat a recovery upon the note.

It will thus be seen that the issues raised between the parties may be resolved into two propositions. The purchasers' contention is that they only made a conditional purchase, and that under it they were not obliged to take or pay for the machinery unless it fulfilled the representations made before the writings were executed, and that, pending the test to be made for the purpose of ascertaining whether or not the machinery was satisfactory, the notes were to be held by the agent of the company, and if the machinery proved satisfactory were to be delivered by him to the company; if it did not prove satisfactory, they were to be returned to the purchasers. On the other hand, the company's contention is that no agreement of this kind was made, and that the only contract was

the written one upon which it relied to defeat the claim asserted by the purchasers, and, furthermore, that the agent had no authority to make the agreements relied on by the purchasers. After the pleadings were made up the action on motion of the defendants was transferred to the ordinary docket for trial of the legal issues presented. Upon a trial before a jury, a verdict was returned in favor of the defendants, now appellees. A reversal is asked for errors in the admission and rejection of evidence, in the instructions given and refused, and because the court failed to give a peremptory instruction to find for the company.

The evidence upon the principal issue was very conflicting; but if no other error was committed, there is not sufficient disparity between the evidence and the finding of the jury to justify us in holding that the verdict was not supported by the evidence, so that we will proceed to consider the legal questions raised by counsel for appellee.

In Wisdom v. Nichols & Shepard Co., 97 S. W. 18, 29 Ky. Law Rep. 1128, and the cases therein cited, it was held that, under a contract similar to the written contract relied on by the company in this case, the rights and remedies of the parties were to be determined by the contract; the court saying: "Contracts similar to this have been before this court in a number of cases, and it has uniformly been ruled that, when the parties to a contract have agreed upon the warranties and remedies that accrue upon a breach of them, these remedies constitute the only relief in this particular that the purchaser has, and he must look to his contract and be governed by its stipulations." But the principle laid down in this and the

other cases is not involved in this one. There is no
pretense that the agent who sold the machine altered
the written contract, or that he had any right to make
any changes in it, or any representations or warran-
ties as to what the machine would do if it had
been accepted under contract. The validity or in-
tegrity of the written contract that was executed
in connection with the notes and mortgage does not
enter into this case. The defense was not an attack
on the contract, or an effort to avoid its conditions,
but was whether or not the written contract became
effective or binding upon the purchasers at all. In
other words, the contract upon which the purchasers
relied was made before the written contract upon
which the company depends was executed. If there
was a valid prior contract between the parties, upon
the faith of which the written contract was entered
into, it follows that the validity of the written con-
tract depends upon the prior contract. The pur-
chasers staked their whole case upon the prior verbal
contract under which the notes and mortgage were
delivered, and, when the trial judge came to instruct
the jury, he said: "You will find for the plaintiff, J.
I. Case Threshing Machine Company, unless you
shall believe from the evidence that prior to the
signing of the order, notes, and mortgage introduced
in evidence, the plaintiff by its agent, Carter, repre-
sented to the defendants that the boiler and engine in
controversy was of sufficient horse power to pull the
threshing machine in controversy over the country
in which they proposed to operate, and that it was of
sufficient power and capacity to run said threshing
machine and perform first-class work; and further
believe from the evidence that prior to the signing

of the papers above mentioned the agent agreed with the defendants that he would make a test for them, demonstrating the power and capacity of the boiler and engine and guarantee that the same had the power and capacity to do the work as represented by him; and further believe from the evidence that under the agreement of the agent to make said test, he induced the defendants to sign said papers as a matter of convenience to the parties before the test was made, and agreed that he would return same to them in the event the test proved and demonstrated that said boiler and engine did not have the power and capacity as represented by him; * * * and further believe from the evidence that such test by them proved the power and capacity of same to be insufficient and further believe from the evidence that, within a reasonble time after making such test, the defendants, or either of them, notified the plaintiff company or its agent of such test, and the result of same. And if you so believe, you will find for the defendants.''

It will thus be seen that under this instruction the jury were directed to find for the company, unless they believed that the agent induced the purchasers to sign the papers under an agreement that he would return them in the event the machinery did not fulfill the representations the agent made concerning it. Generally, it is proper to submit to the jury instructions that present the theory of the case presented by the pleadings of each of the parties; but when, as in this case, the jury were told that they must find for the company unless they believed the agreement in respect to the execution of the notes was entered into, every other issue except this was eliminated

from the case, and hence it was not necessary to sub-
mit to the jury any instructions presenting the de-
fendant's contention in respect to the binding force
and effect of the written contract, because, if the jury
found that the agreement upon which the written
contract was based was not entered into, they were
instructed to find for the company.

Did the agent have authority to make the agree-
ment relied on by the purchasers? It is earnestly
argued by counsel for the appellant that the agree-
ment made by the agent, assuming that one was made,
was in excess of his authority, and, aside from this,
contained representations and warranties that it was
expressly provided in the written contract no agent
should make. But, the agreement made by the agent
did not undertake to vary or contradict the writing.
It was entirely independent of it. The purpose and
effect of the evidence respecting the agreement was
to show that no contract was in fact entered into—
that whether it became effective or not depended en-
tirely upon the performance of certain subsequent
conditions. The execution of the writings and their
delivery under the agreement did not constitute them
a contract, because they were not to become operative
until certain conditions were performed. If the con-
ditions upon which the writings were executed and
delivered to the agent were never fulfilled, the con-
tract did not become operative or binding upon the
purchasers, and so it was admissible to show by parol
evidence the antecedent agreement under which they
were delivered. This evidence did not vary or con-
tradict the writings, but only went to show that no
contract between the parties ever went into effect,
and its admissibility is fully supported by the follow-

ing authorities: McCormick Harvesting Machine Co. v. Morland, 121 Iowa, 451, 96 N. W. 976; Cleveland Refining Co. v. Dunning, 115 Mich. 238, 73 N. W. 239; Burns & Smith Lumber Co. v. Doyle, 71 Conn. 742, 43 Atl. 483, 71 Am. St. Rep. 235; Bedell v. Wilder, 65 Vt. 406, 26 Atl. 589, 36 Am. St. Rep. 871; Michels v. Olmstead, 157 U. S. 198, 15 Sup. Ct. 580, 39 L. Ed. 671; Reynolds v. Robinson, 110 N. Y. 654, 18 N. E. 127; Reiner v. Crawford, 23 Wash. 669, 63 Pac. 516, 83 Am. St. Rep. 848; Bishop on Contracts, Sec. 349; Page on Contracts, § 1209. - In fact, where the rights of no third parties intervene, we do not know of any authority denying the correctness of this principle. Burke v. Dulaney, 153 U. S. 228; 14 Sup. Ct. 816, 38 L. Ed. 698.

It is next insisted that the delivery of the writings to the agent of the company was in fact a delivery to the company itself. The argument is made that a writing intended as an escrow, or to take effect upon the performance of a condition subsequent, must be held by a third person, and that the delivery of it to the party to whom it is executed or his agent destroys any parol agreements respecting the terms or conditions under which the writing was to become operative. It must be conceded that the ancient rule was as contended for by counsel for appellant. Bouvier's Law Dict. title "Escrow"; Blackstone, vol. 2, p. 307; Worrall v. Nunn, 5 N. Y. 229, 55 Am. Dec. 330; Curry v. Colburn, 99 Wis. 319, 74 N. W. 778, 67 Am. St. Rep. 860; 16 Cyc. 573; 11 Am. & Eng. Ency. of Law, p. 339. But the better authority is to the effect that when the rights of no third parties intervene, and there is nothing inconsistent with the agent's duty to his principal in holding the paper

subject to the conditions agreed upon when it was executed, the writing may be delivered to the agent of the adverse party to be held by him until he receives instructions to deliver it to his principal; and we think this the more sensible rule. No good reason can be assigned why the writing may not be held by an agent of one of the parties until the conditions upon which it is to become operative take effect. When a paper is executed and delivered to a third party or to the agent of one of the parties, under an agreement previously made that it is. not to become operative until certain specified conditions have been performed, the contract between the parties is not an executed, but a conditional one; and unless the conditions upon which the contract is to become effective are performed, there is no contract. We do not hold that a delivery to one of the parties to hold pending the performance or fulfillment of the conditions upon which it was to become effective would be valid as an escrow. But it is said that a delivery to an agent is a delivery to the principal, and hence, if a paper cannot be held as an escrow by one of the parties, neither can it be so held by his agent—that the agent and the principal are in law one. This reasoning and conclusion would be very forceful if it were true that the paper was delivered to the agent as the agent of the other party, but a person may be the agent of both of the parties to a transaction if it can be plainly shown that there is nothing inconsistent or antagonistic between his acts for the one and the other. In many business transactions the same person frequently acts as agent for both of the parties under specific instructions from each as to his duties, and when the nature of the employment or transaction is

such that he can faithfully discharge his obligations to the one without conflicting with his fidelity to the other. And so, in the present case, the agent for the company might and did receive and hold the papers as the agent of the purchasers without conflicting with his duty to the company. In holding the writings he was not acting as the agent of the company, but as the agent of the purchasers, and it was admissible to prove the agreement under which the papers were placed in the hands of the agent. Hansford v. Freeman, 99 Ga. 376, 27 S. E. 706; Bank v. Bailhache, 65 Cal. 327, 4 Pac. 106; Harnickell v. New York Life Ins. Co., 40 Hun (N. Y.) 558; Id., 111 N. Y. 390, 18 N. Y. 632, 2 L. R. A. 150.; McCormick Harvesting Machine Co. v. Morland, supra; McFarland v. Sikes, 54 Conn. 250, 7 Atl. 408, 1 Am. St. Rep. 111; Reynolds v. Robinson, supra; Burke v. Dulaney, supra; Wilson v. Powers, 131 Mass. 539; Page on Contracts, §§ 594, 595; Ashford v. Prewitt, 102 Ala. 264, 14 South. 663, 48 Am. St. Rep. 37.

There is a wide difference between a delivery to an agent, as under the circumstances of this case, and a delivery to the adverse party. When a writing, fully executed, is delivered to the party for whom it is intended, the other party, in the absence of fraud or mistake, will not be permitted to set up either an antecedent or a contemporaneous parol agreement that will contradict or vary the writing, which is to be treated as the whole contract between the parties and the best evidence of what their agreement was. If an executed and delivered paper could be explained away, or contradicted by parol evidence, the integrity of every writing would be placed in jeopardy, and the party who, after its execution, became dissatis-

fied, would be strongly tempted to overthrow or avoid its conditions. So firmly is this principle imbedded in the law that the rule is everywhere recognized and enforced that a completed and delivered written contract cannot be varied or contradicted by antecedent or contemporaneous parol evidence unless it is assailed for fraud or mistake. Farmers' Bank v. Wickliffe (Ky.), 131 Ky., 116 S. W. 249; Chitty on Contracts, vol. 1, p. 153; Greenleaf on Evidence, vol. 1, Sec. 275.

Several Kentucky cases are relied upon by counsel in support of the proposition that a paper to be an escrow, must be placed in the hands of a third party, but a careful reading of these cases will show that they are not in conflict with the views expressed in this opinion. We have only extended the rule announced in those cases to embrace agents who are deemed to occupy the relation of third parties to the transaction. No question of agency arose in the cases relied upon, and the court, merely following the strict common law rule, announced that an escrow must be delivered to a third party, and that, if delivered to one of the parties, it ceased to be an escrow, and its terms could not be contradicted or varied by contemporaneous parol expressions. In Wood v. Kendall, 7 J. J. Marsh, 212, the court in a dictum said that the obligation in controversy could not have been an escrow after its delivery to the obligee. In Wight v. Shelby R. Co., 16 B. Mon. 5, 63 Am. Dec. 522, the court, in holding that a subscription paper delivered to one of the parties to the paper could not be treated as an escrow, said: "It must be placed in the hands of a third party, by the party making it, to be delivered to the other party on the happening of a specified

contingency.'' To the same effect is Millett v. Parker, 2 Metc. 608; Hubble v. Murphy, 1 Duv. 279; Dils v. Bank of Pikeville, 109 Ky. 757, 60 S. W. 715, 22 R. 1451.

There being no substantial error in the record, the judgment is affirmed.

Petition for rehearing by appellant overruled.