### Pickrell, et al. v. Wilson, et al.

(Decided May 1, 1923.)

#### Appeal from Jefferson Circuit Court (Common Pleas Branch, Fourth Division).

1. Evidence—Oral Evidence of Condition Subsequent to Written Contract is Inadmissible.—Oral evidence is inadmissible to show a condition subsequent to a written contract, since such evidence admits the existence of the contract, and superimposes additional conditions therein.

2. Evidence—Oral Evidence Contract was Delivered on Condition Precedent Does not Vary its Terms.—Oral evidence that a written contract was delivered on condition precedent that it should not take effect until the happening of a certain contingency does not contradict or vary the terms of the writing or introduce any new conditions therein, and is admissible to show no valid contract was made.

3. Evidence—Delivery of Written Contract to Principal Does not Prevent Oral Evidence of Conditions Precedent.—The fact that the delivery of a written contract was made directly to a principal party named therein, instead of to that party's agent, does not render inadmissible oral evidence of a condition precedent that the contract should not take effect until the happening of a stated contingency.

4. Trial—Refusal to Transfer Action for Royalties on Patent License to Equity Held not Error.—In an action by patentees to recover the amount of royalties due under the terms of an exclusive license to manufacture and sell articles under the patent, in which the evidence, while elaborate, did not embrace such a great detail of facts

as to render it impracticable for a jury to try it, it was not error· to refuse to transfer the case to the equity docket.

HELM BRUCE and DUFFIN, VANCE & DUFFIN for appellants.

J. M. CHILTON and EDWARDS, OGDEN & PEAK for appellees.

OPINION OF THE COURT BY JUDGE MCCANDLESS—Reversing.

For brevity William Wilson and H. C. Dunavent will be referred to hereinafter as the appellees and J. E. Zinsmeister and Otis Pickrell as the appellants.

The appellees were owners of certain letters patent No. 1032917 issued by the United States Patent Office to one Robert Lynch, and covering an invention for an alleged new and improved sanitary milk strainer. By a writing dated June 14, 1914, and executed by all the parties, appellees granted to the appellants the exclusive right to manufacture and sell the articles covered by the letters patent for a period of five years, in consideration of certain royalties to be paid them on the goods sold and delivered·; they being guaranteed a certain annual minimum in royalties, with a stipulation as to how the latter should be regulated. Alleging a violation of this contract the appellees brought suit in October, 1915, for the minimum royalties then due on the first year's business thereunder. Various motions and pleadings were filed by both parties and the case finally reached submission and trial in January, 1920, resulting in a verdict and judgment for the appellees in the sum of $4,927.94.

Appellants claim that in the negotiations leading up to the execution of this paper, appellees produced a sample strainer of their manufacture and assured them that the patent was a basic one, and that it protected and gave a monopoly on the manufacture and sale of the particular device shown. Appellants were not familiar with patent law, and by agreement sent the sample strainer and letters patent to a firm of lawyers in Chicago, with the request that they investigate and inform them if the patent was valid, and if it would protect them in the manufacture of this particular strainer. There was some delay in securing this information and at the request of appellees and for·their convenience the paper filed in suit was signed and a copy delivered to each of the parties, but with the distinct understanding and agreement that it was not to become effective until and

unless the attorneys reported favorably, and in the event of an adverse report the signed papers were to be returned and destroyed.

Shortly afterward the attorneys did report unfavorably. Appellees were informed of this and acquiesced therein, and all concerned agreed that the matter was at end and other arrangements were made for the manufacture of the strainers in which the appellants assumed no individual liability.

The matters thus claimed were elaborately pleaded in the answer and traversed in the reply and evidence introduced in support thereof; but later the court excluded evidence as to conditional delivery of the instrument and this issue was not submitted to the jury.

While there is conflict in the decisions upon this question, it seems that in part it is due to a failure to distinguish between a condition precedent, upon which the existence of the contract depends and a condition subsequent which admits the existence of the contract but superimposes additional conditions therein. In the latter class of cases the evidence is clearly inadmissible, but in the former practically all the text writers and the great majority of the decisions are in accord that such evidence is admissible.

The ruling of the lower court was based on the conclusion that such evidence tended to vary or contradict the terms of the written instrument, and if it does there can be no question as to its propriety. It will be observed, however, that the proposed evidence did not introduce any new conditions in the writing, or vary any of its terms, or alter or contradict it in any particular. Its purpose was to show that the papers were signed and transferred between the parties not as the delivery of an executed contract, but to take effect upon certain conditions, and in default of such conditions there was no contract. Burke v. Dulaney, 153 U. S. 228; Ware v. Allen, 128 U. S. 590; McCormack Harvesting Machine Co. v. Morland, 121 Iowa 451; Cleveland Refining Co. v. Dunning, 115 Mich. 238; Burns & Smith Lumber Co. v. Doyle, 71 Conn. 742; Bedell v. Wilder, 65 Vt. 406; Michels v. Olmstead, 157 U. S. 198; Reynolds v. Robinson, 110 N. Y. 654; Pym v. Campbell, 6 El. & Bl. 370-3; Reiner v. Crawford, 23 Wash. 669; McFarland v. Sikes, 54 Conn. 250; Wilson v. Powers, 131 Mass. 539; Gilroy v. Everson Hickkock Co., 190 N. Y. 551; Wigmore on Evidence, sec. 240-9-10; Bishop on Contracts, secs. 349-357; Williston on Con-

tracts, sec. 632; Elliott on Contracts, 1636; 22 Corpus Juris, page 1150 and cases cited; 10 R. C. L., page 1055; Brown on Parol Evidence, sec. 32.

The case of Hubble v. Murphy, 63 Ky. 247, on the authority of the case of Moss v. Riddle, 5 Cranth. 357, held that a bond could not be delivered to the obligee as an escrow, and suggestions of this character may be found in a number of our opinions, but in that case and in an unbroken line of decisions since, it has been held that when a purchaser or payee takes a note with notice that a surety thereon executed it with the understanding that another surety or additional security by way of mortgage was to be taken before negotiation, that in default thereof such fact may be pleaded as a defense by way of counterclaim, and the surety recover the damage sustained thereby. Smith v. Moberly, 49 Ky. 266; Jones v. Shelbyville Fire & Marine Insurance Co., 58 Ky. 58; Hudspeth's Admr. v. Tyler, 108 Ky. 520; Dils v. Bank of Pikeville, 22 Rep. 1451; Caudle v. Ford 24 Rep. 1764. Indeed in the last named case it was shown the principal promised both additional surety and a mortgage to secure all the sureties and that the purchaser of the note had notice of it, and the entire note was defeated.

We have another line of decisions in which it has been held that where it clearly appears that the written instrument is incomplete or does not embrace all of the terms of the contract, the omission may be proven by parol, but none of these are analogous, and so far as we are advised the only case in this state in which the precise question has arisen is that of J. I. Case Co. v. Barnes, 133 Ky. 330. Suit had been brought on a contract for the sale of certain machinery. The defendant claimed that the contract was executed and delivered on condition that it was not to be effective until certain tests of the machinery were made to the satisfaction of the defendant; that the tests were made and did not prove satisfactory. The court said: "But the agreement made by the agent did not undertake to vary or contradict the writing. It was entirely independent of it. The purpose and effect of the evidence respecting the agreement was to show that no contract was in fact entered into—that whether it became effective or not depended entirely upon the performance of certain subsequent conditions. The execution of the writings and their delivery under the agreement did not constitute them a contract, because they were not to become operative until certain conditions

were performed. If the conditions upon which the writings were executed and delivered to the agent were never fulfilled, the contract did not become operative or binding upon the purchasers, and so it was admissible to show by parol evidence the antecedent agreement under which they were delivered. The evidence did not vary or contradict the writings, but only went to show that no contract between the parties ever went into effect,'' citing numerous cases.

The above reasoning is entirely satisfactory and we concur in the conclusion reached.

Later in the opinion a distinction was drawn between a delivery to the grantee in person and a delivery to the agent of the latter, and it was intimated that in a transaction between individual principals the rule would be otherwise. The same distinctions may be found in the decisions of some of the other courts, but we are unable to assent to this.

If ''the execution of the writings and their delivery under the agreement did not constitute them a contract because they were not to become operative until certain conditions were performed,'' and parol evidence was admissible to show this in the one case, why should it not apply in the other? Surely if a valid condition can be imposed in negotiating with an agent, the same can be done in dealing with the principal. If the condition is valid and the same rights exist in both cases, the remedy should not be granted in the one instance and denied in the other. In its last analysis it would seem that the distinction is based on the idea that possession of the instrument by the obligee is conclusive evidence of a completed contract, but this has been fully and as we think satisfactorily answered by the Supreme Court in the Burke case, which was a transaction between individual principals. The court said:

''The exclusion of parol evidence of such an agreement could be justified only upon the ground that the mere possession of a written instrument, in form a promissory note, by the person named in it as payee, is conclusive of his right to hold it as the absolute obligation of the maker. While such possession is undoubtedly *prima facie,* indeed should be deemed strong evidence that the instrument came to the hands of the payee as an obligation of the maker, enforcible according to its legal import, it is open to the latter to prove the circumstances under which possession was acquired, and to show that

there never was any complete final delivery of the writing as the promissory note. of the maker payable at all. events and according to the terms. The rule that excludes parol evidence in contradition of a written agreement presupposes the existence in fact of such agreement at the time suit is brought. But this rule has no application if the writing is not delivered as a present contract." Burke v. Dulaney. 153 U. S. 228.

The cases of Michels v. Olmstead, Beddell v. Wilder, Reynolds v. Robinson, Reiner v. Crawford, *supra,* cited as authority in the Barnes case, all involved transactions between individual principals, and we conclude that so much of the opinion as indicates that a different rule would apply to dealings between individual parties was not necessary to a decision of that case and is not to be construed as authority.

It is claimed that under the contract the minimum royalty was not due at the end of each year but that its collection was postponed until the end of the five year period. We construe the contract to mean that such royalties were due and collectible annually, but inasmuch as the five-year period has passed and the case must be reversed for other reasons it is not deemed necessary to set out the lengthy provisions of the contract in that regard. Also we do not think the court erred in refusing to transfer this case to the equity docket. While the evidence is elaborate it does not embrace such a great detail of facts as to render it impracticable for a jury to try it.

Wherefore judgment is reversed, and cause remanded for proceedings consistent with this opinion.

Whole court sitting.