# Cumnock-Reed Co. v. Lewis.
## Same v. Gilvin.
May 19, 1939.

FORD FISHBACK for appellant.

L. D. LEWIS for appellee H. C. Lewis.

J. H. ASHER for appellee R. L. Gilvin.

OPINION OF THE COURT BY SIMS, COMMISSIONER—Affirming.

Since these two appeals are prosecuted by the same appellant and involve the construction of the same contract, they have been heard together, and this opinion covers both cases. Appellant, Cumnock-Reed Company, defendant below in each case, will be referred to as the defendant, and the two appellees, Lewis and Gilvin, plaintiffs below, will be referred to by name.

Defendant, a Kentucky corporation, maintaining its chief office in Louisville, Kentucky, was engaged in the timber business in Leslie County, where it operated a mill for making staves for whiskey, beer and oil barrels. Gilvin had been working for defendant since 1934, at a salary of $50 per month, and being acquainted with W. P. Cumnock, president of the defendant company, on November 11, 1935, he entered into a written contract with defendant, acting through its president, which clearly made Gilvin an independent contractor if that contract had become effective between the parties. The contract is rather long and contains numerous terms and conditions, but as we have reached the conclusion it was not the contract under which Gilvin performed the services for defendant which constitutes the basis of this suit, it will not be necessary to set out the contract. We will give its substance in a few words. This contract provided Gilvin was to employ the necessary labor to cut timber on defendant's land and to manufacture same into staves, which were to be delivered at the railroad. For this work Gilvin was to be paid certain prices per thousand staves manufactured and delivered at the railroad. He was to carry the necessary compen-

sation insurance on his employees as required by the Workmens' Compensation Law of Kentucky (Kentucky Statutes, Section 4946 et seq.).

Gilvin sued defendant for a balance of $650, alleging in his petition he operated defendant's stave mill for thirty months at an agreed salary for $50 per month and that the defendant had only paid him $850, leaving a balance due him of $650. Defendant's answer denied it had agreed to pay Gilvin $50 per month for operating this mill, or that he worked for it on a salary, or that it was indebted to him in any sum. In a second paragraph defendant pleaded affirmatively any and all work that Gilvin did for it was performed under the contract of November 11, 1935, and that Gilvin has been paid in full for all sums due him for labor under this contract. In his reply Gilvin admitted signing the contract, but "denies he ever acted under the alleged contract, or any contract by the thousand in any way, manner or form to manufacture staves for the defendant, but on the contrary this defendant agreed to pay him $50.00 per month and this (written) contract was a fabrication on the part of the defendant to avoid payment of compensation to the men if there should be any injury or damages; * * * denies any part of said work was done by or under said alleged contract, * * * denies that anything was ever paid him on said alleged contract, * * * denies that it was ever intended to do any work under this contract, or that defendant ever asked him to work by the thousand (the written contract), but on the contrary he says that he received a salary of $50.00 per month."

The parties agreed to waive the jury and to submit the law and the facts to the court. Only one witness was introduced and that was Gilvin. He testified he worked for defendant as superintendent in charge of its local operations for thirty months at an agreed salary of $50 per month upon which defendant paid him $850 and that defendant was indebted to him in the balance of $650. Gilvin testified he signed the written contract at the request of W. P. Cumnock, defendant's president, so the defendant company "could avoid the compensation law" and that the only reason he signed the contract was to "procure payment of the labor he had hired and to enable defendant to operate without being amenable to the compensation law;" that after he signed this contract the defendant deposited money in the Hyden

Citizens Bank to the credit of his wife ana made out checks for her to sign in paying the men; that he could not have operated under said contract because it was impossible to manufacture bourbon staves alone as provided therein; and that he did not work under this contract, and was never paid "by the thousand" as provided in the written contract, but he worked under a former oral agreement at $50 per month. Defendant objected to Gilvin's testimony on the ground he was attempting to vary the terms of a written contract by parol evidence, and that he was attempting to prove prior and contemporaneous agreements which merged into the written contract. The court overruled defendant's objection to this testimony and held the written contract was not the contract under which Gilvin performed the services for defendant and gave judgment for Gilvin for $650. Defendant's motion and grounds for a new trial were overruled and it is here on appeal with its bill of exceptions.

After Gilvin signed the contract with defendant he employed Lewis to haul and deliver lumber to the mill at an agreed price per thousand and for which labor Lewis sued defendant for $665.03 as the balance due him by it, the petition alleging defendant had employed Lewis to perform this labor. Defendant's answer denied it had employed Lewis and denied it was indebted to him in any sum; and in a second paragraph defendant pleaded Gilvin was an independent contractor and that whatever labor Lewis performed was not for the defendant but was for Gilvin. By agreement of parties the affirmative matter in the second paragraph of the answer was controverted of record. A jury was waived by agreement and the law and facts were submitted to the court. Only two witnesses testified, Lewis, the plaintiff, and Gilvin. Their testimony was not reported but appears in the bill of exceptions in narrative form and is quite brief. Lewis testified:

> "He negotiated with and obtained said contract from R. L. Gilvin, who claimed to be, and was, the superintendent of the defendant in charge of operations, * * * and that defendant is now indebted to him in the sum of $406.05."

There was no cross examination of Lewis.

Gilvin testified defendant owned the machinery and employed him as superintendent and placed him in

charge of its mill and timber operations; that he employed Lewis to haul the timber to the mill and defendant was indebted to Lewis in the sum Lewis claimed. On cross examination Gilvin was presented with the written contract signed by him and by defendant, and his testimony concerning this contract was practically the same as he gave in his own case. Lewis was then recalled and testified that at the time of his employment by Gilvin he knew nothing of the written contract between Gilvin and the defendant. Defendant moved the court to exclude as incompetent all evidence relating to any contract Lewis testified he made with defendant through Gilvin, and relating to Gilvin being superintendent or managing agent of defendant. The court overruled this motion to which ruling defendant excepted. Thereupon the court gave judgment for Lewis in the sum of $406.05 and the defendant saved exceptions to the judgment of the court, filed his bill of exceptions and made a motion in this court for an appeal.

Defendant assigns two reasons in each case why the judgment should be reversed: 1. That under the pleadings, the contract of November 11, 1935, could not be impeached or abrogated by the oral testimony of Gilvin, and that by the terms of the contract Gilvin is an independent contractor, therefore, Gilvin, and not the defendant, is indebted to Lewis. 2. That Gilvin's testimony that he was employed by defendant as its agent is incompetent. Defendant makes the third point in the Gilvin case that Gilvin, having been employed under the terms of the contract, cannot maintain this action based upon an oral agreement for services performed under the written contract.

Appellant insists that Gilvin's testimony is an attempt to contradict or vary the terms of the written contract of November 11, 1935, therefore, it is incompetent in the absence of a plea of oversight, fraud or mistake. There can be no doubt about the correctness of the rule that parol evidence is not admissible to contradict or vary the terms of a written contract. 10 R. C. L. 1016 to 1020, Sections 208-212; Davis et ux. v. Poulos et ux., 237 Ky. 763, 36 S. W. (2d) 373; McKenna v. Culton, 258 Ky. 333, 80 S. W. (2d) 13. But the question we are concerned with is, did Gilvin's testimony attempt to contradict or vary the terms of the contract, or did it attempt to show that the contract was never in force or effect? Parol evidence is admissible to show that it was

never intended for the written contract to become effective between the parties and that it never in fact had any legal existence. 22 C. J. 1214, Section 1617. We have followed this rule in Pickrell et al. v. Wilson et al., 199 Ky. 20, 250 S. W. 135; Lincoln v. Burback, 218 Ky. 89, 290 S. W. 1081; and Case Threshing Machine Company v. Barnes, 133 Ky. 321, 117 S. W. 418, 19 Ann. Cas. 246. While these cases all contain a condition precedent which must be complied with before the contract becomes effective, we can see no distinction between the contract becoming effective upon the happening of such a condition and a contract wherein the parties agreed it would never become effective but was executed as a sham or as a matter of form. If parol evidence is admissible to show the condition precedent never happened, and, therefore, the contract never became effective, why is parol evidence not admissible to show the parties agreed that the contract would never become effective and that they never put its terms in force and disregarded it in its entirety? We wrote in the Pickrell case, 199 Ky. 20, 250 S. W. 136:

"Its purpose [parol evidence] was to show that the papers were signed and transferred between the parties, not as the delivery of an executed contract, but to take effect upon certain conditions, and in default of such conditions there was no contract."

In the case before us Gilvin's parol evidence was to show there was no delivery of the contract in the legal sense and that it never became effective. The delivery of a contract in a legal sense must not be confused with its physical delivery. Legal delivery means that the contract is intended to take effect as a valid obligation. If there is a delivery of a contract in the legal sense, then it cannot be contradicted or varied by parol evidence. See annotation under parol evidence, 20 A. L. R. 425. In Burke v. Dulaney, 153 U. S. 228, 234, 14 S. Ct. 816, 818, 38 L. Ed. 698, Mr. Justice Harlan wrote:

"The rule that excludes parol evidence in contradiction of a written agreement presupposes the existence in fact of such agreement at the time suit is brought. But the rule has no application if the writing was not delivered as a present contract. [And parol evidence was admissible to show] that there never was any concluded, binding contract en-

titling the party who claimed the benefit of it to enforce its stipulations.''

We wrote in the Barnes case, supra [133 Ky. 321, 117 S. W. 420]:

''The purpose and effect of the evidence respecting the agreement was to show that no contract was in fact entered into. * * * This evidence did not vary or contradict the writings, but only went to show that no contract between the parties ever went into effect, and its admissibility is fully supported by the following authorities. [Here many cases are cited].''

In Southern Street-Railway Advertising Company of Baltimore v. Metropole Shoe Manufacturing Company of Baltimore, 91 Md. 61, 46 A. 513, the parties entered into an oral contract for a stipulated sum, after which the advertising company presented a written contract to the Shoe Company fixing a much higher rate. The Shoe Company signed the written contract under the representation of the Advertising Company that it would never be considered effective, but was for the purpose of showing other customers the large volume of business it was doing at high rates. That case is quite analogous to the one before us, and the Maryland court allowed the Shoe Company to introduce parol evidence not to vary the written contract, but for the purpose of showing it was not the contract between the parties. This case was followed in A. D. Birely & Sons v. Dodson, 107 Md. 229, 68 A. 488, and in Furness, Withy & Co. v. Fahey, 127 Md. 333, 96 A. 619. In Grebe v. Swords, 28 N. D. 330, 149 N. W. 126, the court, after pointing out the rule that all prior and contemporanecus negotiations merge into the written contract and parol evidence is not admissible to vary the terms or to contradict the writing, held that parol evidence was admissible to show the writing was never intended to have any effect by the parties.

The rule that parol evidence may be introduced to show the written contract was never intended to become effective by the parties is not in conflict with the rule that in the absence of a plea of oversight, fraud or mistake, a party who has signed a note cannot introduce parol evidence that it was agreed at the time it was signed the maker would never be called upon to pay it. To allow a party to say: ''It is true, I signed the note,

but it was agreed I was not to pay it," is simply an attempt to vary the terms of the written contract by parol evidence of contemporaneous declarations. We have held in the following cases such evidence is not admissible. Stewart et al. v. Gardner, 152 Ky. 120, 153 S. W. 3; Simpson v. Blaine, 191 Ky. 465, 230 S. W. 934; Brown v. Turpin, 229 Ky. 383, 17 S. W. (2d) 253; Davis et ux. v. Poulos et ux., 237 Ky. 763, 36 S. W. (2d) 373; Hoffman v. Wilson, 208 Ky. 195, 270 S. W. 788; Roberts v. Combs, 226 Ky. 97, 10 S. W. (2d) 608; Saad v. Hatfield, 258 Ky. 525, 80 S. W. (2d) 583.

We conclude Gilvin's parol testimony was competent to show the written contract never became effective. The defendant introduced no evidence but relied solely on its objection being sustained to Gilvin's testimony. As Gilvin's parol evidence was competent to prove the written contract never became effective, and as defendant introduced no evidence, we find no error in the trial judge entering judgment for Gilvin in the sum of $650 which he testified defendant owed him.

In the Lewis case, it is argued by defendant that the testimony of Lewis and of Gilvin that Gilvin was the superintendent and managing agent of the defendant should be excluded as incompetent, and many cases are cited to the effect that the declarations of an agent are not competent to prove agency or the extent of the alleged agent's authority. An examination of these cases shows the rule in this jurisdiction to be that the burden of proving agency is on the party alleging it, and that the declarations of an alleged agent made to a third person in the absence of the alleged principal, and not ratified by the principal, are not competent to prove agency. McFarland's Adm'r v. McFarland, 235 Ky. 283, 30 S. W. (2d) 958; Kentucky-Penn. Oil & Gas Company v. Clark, 247 Ky. 438, 57 S. W. (2d) 65. But this rule does not prevent the alleged agent from going upon the witness stand and testifying as to the terms of his contract of employment with his alleged principal, his duties and authority, and the extent thereof. It only excludes as incompetent the declarations or admissions by the alleged agent made to third persons out of court, 2 C. J. 933, Sections 688, 689. See Crump v. Sabath, 261 Ky. 652, 88 S. W. (2d) 665, wherein many authorities on the subject are collected.

Under this rule the court erred in allowing Lewis to testify that when he made a contract with Gilvin,

504

"that Gilvin claimed to be and was superintendent of defendant in charge of operations." The claim Gilvin made to Lewis that he was the agent or superintendent of defendant falls directly within the rule that agency cannot be proven by the declarations of the agent to third persons. The statement by Lewis that Gilvin "was superintendent of defendant in charge of operations" was not a statement of fact but was a mere conclusion on the part of Lewis, therefore, it was incompetent. 2 C. J. 935, Section 691; Springfield Fire & Marine Insurance Company v. Ramey, 245 Ky. 367, 53 S. W. (2d) 560. But the error of the court in admitting this testimony given by Lewis did not prejudice defendant's case for if all of it be excluded, then there is left the testimony of Gilvin given in behalf of Lewis. Gilvin testified he was the superintendent of defendant in charge of its mill and timber operations and that he employed Lewis to haul the timber to the mill and defendant was indebted to Lewis in the sum Lewis claimed.

We conclude Gilvin's testimony was competent to show he was defendant's superintendent in charge of operations and that as such he employed Lewis to work for defendant. In this Lewis case defendant introduced no evidence but relied solely upon its objections being sustained to the evidence of Lewis and of Gilvin. The testimony for the plaintiff, Lewis, showed defendant was indebted to him in the sum of $406.05, and we find no error in the trial judge entering a judgment for Lewis in that sum.

Wherefore, the judgment is affirmed in the Gilvin case. Defendant's motion for an appeal is denied in the Lewis case and the judgment is affirmed.