CHARLES ZUBIK & SONS, Inc., Appellant,

v.

MARINE SALES & SERVICE, Kentucky River Collieries, Inc., and Charles W. Gilley, Appellees.

Court of Appeals of Kentucky.

March 15, 1957.

Henry R. Heyburn, Peter, Heyburn & Marshall, Louisville, for appellant.

C. Maxwell Brown, Louisville, for appellee, Marine Sales & Service, Inc.

Marshall P. Eldred, Charles B. Tachau, Louisville, for appellees, Kentucky River Collieries, Inc., and Chas. W. Gilley.

STEWART, Judge.

This action was instituted by Marine Sales & Service, Inc. to recover the sum of $2,706.27, with 6% interest, jointly and severally, from Charles Zubik & Sons, a Pennsylvania corporation, Kentucky River Collieries, a Kentucky corporation, and Charles W. Gilley. Hereinafter these parties in the order named will be referred to as "Marine Sales", "Zubik, Inc.", "Collieries" and "Gilley". Charles Zubik, president of Charles Zubik & Sons, Inc., will enter the picture later on and will be referred to as "Zubik".

The facts immediately leading up to this litigation are that on January 8, 1954, a river barge loaded with coal sank in front of Collieries' dock on the Kentucky River near Clay's Ferry. This vessel had sometime prior thereto been sold together with five other barges by Zubik under a conditional sales contract to one Philip Ritchie of Paducah. It appears that Ritchie, who was operating the barge on the occasion, had not fully performed his obligation under the conditional sales agreement and

at the time of its sinking there was every indication that his interest in the barge had been terminated by Zubik. The cargo belonged to Collieries and it was in due course retrieved without much difficulty. A representative of an adjusting firm went to the scene to survey the situation for the insurer, made an inspection of the submerged barge and, although he entertained some doubt about the practicability of attempting to raise it, he advised that an effort should be undertaken to do so. Gilley, the president of Collieries, desired the barge moved because its position hampered the landing of river craft at the company's dock. Accordingly, he contacted Zubik at his home in Pittsburgh and secured, by telegram, his authorization to go forward with this venture.

The salvage operations were then commenced by Marine Sales but this work was abandoned about a week thereafter as fruitless. Marine Sales later sent a bill for its services to Collieries, which refused to pay on the ground that through its president, Gilley, it had acted solely as agent for Zubik, Inc. in employing Marine Sales, and Zubik, Inc. was liable. Marine Sales, as has been mentioned, thereupon filed suit against Zubik, Inc., Collieries and its president, Gilley. Zubik, Inc., not having an agent for the service of process upon it within Kentucky, was served constructively in accordance with KRS 271.610(2) by the delivery of a summons to the Secretary of State. Zubik, Inc. promptly moved to quash the summons on the ground that it was not during the time involved "doing business" in this state within the meaning of the above statute and was therefore not brought before the lower court by this type of service. This motion was overruled and the case proceeded to trial on the merits. A verdict was rendered for Marine Sales for the full amount of its claim against Zubik, Inc. and no recovery was allowed as to the other parties defendant.

Zubik, Inc. has appealed and urges a reversal for these reasons: (1) The motion to quash the service of summons should have been sustained. (2) There was no showing that Zubik, Inc. had made Gilley its agent for the purpose of arranging for the salvaging of the barge. (3) If it were shown that Gilley was an agent, he was the agent of Zubik personally, who was not a party to the action, and not the agent of Zubik, Inc., which corporation over its objection was adjudged to be before the court. Zubik, Inc. advanced certain other grounds for reversal but they are not set forth because they seem to be merely subpoints under ground (2) above.

KRS 271.610(2) provides in substance that a foreign corporation shall be deemed to have made the Secretary of State its agent for the service of process in any civil action against such corporation involving a cause of action arising out of the "doing of business by such corporation in this state." It has been held that the amount of business that must be transacted for a corporation to be "doing business" within a particular state cannot be expressed with mathematical exactitude. International Harvester Co. v. Kentucky, 234 U.S. 579, 34 S.Ct. 944, 945, 58 L.Ed. 1479, remarked in this connection: "Each case must depend upon its own facts." See also Stevens on Corporations (2nd Ed., 1949), Sec. 206, pp. 991–992. The Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 159, 90 L.Ed. 95, has stated that "it is evident that the criteria by which we mark the boundary line between those activities which justify the subjection of a corporation to suit, and those which do not, cannot be simply mechanical or quantitative."

It should be emphasized, however, that the *quantity* of business which must be done for a state to have jurisdiction over a foreign corporation has progressively become smaller and smaller. In fact, by drawing an analogy to the non-resident motorist cases, it might even be argued that a single act of doing business might be enough. See Stevens, supra, Sec. 206, p. 1,000. This same

authority in a footnote on page 1,000 also points out that the amount of business sufficient to subject a corporation to service of process in an ordinary business transaction performed within the state can be considerably less than that required for other purposes, e. g. taxation.

■ The record in this case shows that Zubik, Inc. has engaged in several different lines of activity within the borders of Kentucky. It has chartered vessels for use within Kentucky waters, and it has operated river craft for its own account on the navigable streams of this state. It has purchased equipment in this state either for its own use or for sale to others. It has made repairs to barges within Kentucky either with its own men or by authorizing others to do so. All these activities were carried on continuously from 1951 to 1954, inclusive, and we believe they constituted "doing business" at the time in question to such an extent as to make proper the service of summons obtained in this case in compliance with KRS 271.610(2). Furthermore, the subject matter sued upon arose in this jurisdiction.

■ The second and third contentions advanced by appellant for reversal will be considered together. Was Gilley, the president of Collieries, the agent of Zubik, Inc. for the purpose of entering into the agreement with Marine Sales to have the barge raised? Zubik testified he individually owned the barge and that if Gilley was anyone's agent, he was his personally and not the corporation's agent. He further claimed he had title to all the equipment employed in every operation pertaining to river traffic and that the corporation handled all the business transactions incident to this trade.

An analysis of the evidence reveals that Zubik's business activities, generally speaking, created much ambiguity as to whether he as an individual or as president of Zubik, Inc. was involved in any given business deal. In the case at bar, it will be recalled that Gilley testified Zubik empowered him by a telegram which Zubik signed personally to enter into the contract with Marine Sales to raise the barge. According to Gilley, he carried out Zubik's instructions by contacting L. G. Droppelman, the president of Marine Sales, and authorized him to undertake the salvaging work. Gilley stated he was acting as the agent of Zubik, Inc. in carrying out this project. The attempt to bring the vessel to the surface ceased about a week thereafter as the outcome of a telephone call from Zubik to Droppelman. In the course of this telephone conversation, and these two men had not previously communicated with each other concerning this matter, Zubik identified himself as "Charles Zubik of Charles Zubik & Sons Corporation". Zubik then instructed Droppelman to terminate his work and proposed that Droppelman "take the barge for your bill". When Droppelman refused this offer, Zubik told the latter to send the bill to Gilley, not to him. Then Marine Sales' difficulties in collecting its debt began.

Gilley testified Zubik acted in a dual capacity in another transaction he had with him subsequent to the occasion involved in this litigation. This concerned four barges Collieries purchased from Zubik. Gilley stated he was under the impression Collieries bought these vessels from Zubik, Inc. This was denied by Zubik who testified he personally made the trade. However, notwithstanding Zubik's statement on the witness stand that he individually sold these barges to Collieries, every payment the latter made on this deal was by check payable to Zubik, Inc. All these checks, the smallest of which was $2,000, were endorsed simply for deposit in the bank account of Zubik, Inc., and it was never suggested to the purchaser at any time that any of the checks were improperly drawn.

Other incidents were brought out in the record where Zubik intermingled his personal affairs with those of Zubik, Inc. Monroe Crull, a lock operator in the employ of the United States Corps of Engineers,

testified that the records of the Zubik boats passing through the Ohio River locks indicated the Zubik interests are so intermixed as to be incapable of separation. It was brought out that Zubik used tugs for towing which were ostensibly leased to Zubik, Inc. wherever and whenever he wanted them to deliver his own barges, and no records were produced to show any payments made by him to the corporation for these services. It also appears that in towages of cargo Zubik, Inc. made regular use of an Interstate Commerce Commission license which had been issued to Zubik as an individual. Zubik's own son and daughter, who were in charge of the clerical work in his office, did not even know, or at least could not remember, in what capacity he was acting on any particular occasion.

In the light of the foregoing facts the lower court told the jury, in its third instruction, in effect, if they believed that Zubik had continuously held himself out to Collieries and Gilley as the agent of Zubik, Inc., that Zubik had acted as though he had general authority to bind this corporation, that Zubik, Inc. had acquiesced in such conduct, and that Collieries and Gilley had relied upon such facts in authorizing Marine Sales to undertake the salvage work in question, then the jury could find against Zubik, Inc. alone for the debt sued on. This instruction permitted the jury to find that Zubik, Inc. was estopped to deny that Zubik was its agent. It is clear from the proof we have recited that Zubik, in the management of his business affairs, had a persistent habit of switching interchangeably, back and forth, from an individual to a corporate capacity, with the result that those with whom he dealt were unable to determine in which capacity he functioned from day to day. From such a course of dealings upon Zubik's part the jury in this case could well believe, taking into account this evidence alone, that Zubik was speaking as president of and in behalf of Zubik, Inc. when he instructed Gilley to proceed with the work of salvaging the barge. There was also the statement of Gilley that he was the agent of Zubik, Inc. when he undertook to recover the submerged vessel. The jury's determination that Zubik, Inc. was liable for Gilley's action in making the contract involved in this case is amply sustained by the evidence. Such a determination of necessity excludes the idea that Collieries or Gilley was the agent of Zubik individually.

Gilley's testimony that he was acting as the agent of Zubik, Inc. in the barge raising deal was objected to by appellant on the theory that this evidence was improperly admitted because it maintains agency cannot be established by the testimony of the agent alone. This statement of the rule is inaccurate. The agent is not precluded from testifying *in court* as to the existence and extent of his authority, but others are prevented from testifying as to declarations made by him *out of court*. Such a principle is, of course, nothing but a particularized enunciation of the "hearsay rule". The distinction between the correct rule and that contended for by appellant is clearly set forth in Grove Lodge, etc. v. Fidelity Phenix Ins. Co., 191 Ky. 666, 231 S.W. 215. See also Cumnock-Reed Co. v. Lewis, 278 Ky. 496, 128 S.W.2d 926, and the authorities therein cited.

We will concede that appellant has made a strong argument against the existence of any agency. It attempts to explain away the telegram by saying that it was sent only for the purpose of giving Gilley *permission* to work on the barge and it did not authorize him to hire any one to raise the sunken vessel at the expense of Zubik, Inc. It would also have us believe that Collieries was more interested than anyone in having the barge raised since the submerged barge blocked its access to and from the dock, and this, according to appellant's view, shows that Collieries and not Zubik, Inc. acted to have the barge raised. However, this theory only detracts from the weight of the testimony to the contrary.

Wherefore, for the reasons indicated, the judgment is affirmed.