## Ryan & Miller v. The American Steel & Wire Co.

(Decided May 22, 1912.)

### Appeal from Calloway Circuit Court.

1. Principal and Agent—Contracts.—In the absence of special authority to bind his principal, a commercial drummer can merely solicit and transmit the order, and the contract of sale does not become complete until the order is accepted by his principal.

2. Contracts—Sale of Patent Fence—Sale to One Merchant in Territory.—The mere fact that the manufacturer of a patent fence sold its goods to only one merchant in a town or district, did not, of itself, create any contractual obligation for future sales, or a continuance of that arrangement.

OLIVER & OLIVER for appellants.

SHEMWELL & REEDER for appellee.

OPINION OF THE COURT BY JUDGE MILLER—Affirming.

Ryan & Miller are merchants doing business in Hardin, Marshall County, Kentucky, and for a period of four years, beginning about 1906, they had sold, in that locality, a patent woven wire fence manufactured by the appellee, and known upon the market as the "American Fence." At the close of 1909, Ryan & Miller were indebted to appellee in the sum of $1,579.10, which was evidenced by two notes dated May 1, 1910. On June 13, 1910, they brought this action against the appellee for $1,000 damages for breach of contract, and asked that the $1,000 be set off against their indebtedness to appellee. As the basis of their claim appellants allege they had a contract with the appellee for the exclusive right to sell the "American Fence" in Hardin and vicinity; that the appellee agreed to furnish appellants said "American Fence" in such quantities as their trade

might require, for the season of 1910, to the amount of at least five car loads, and that appellee had broken the contract and refused to deliver any of the goods called for therein. Appellants alleged and showed that their usual profit on sales of the fence was from $175 to $200 per car load. At the conclusion of all the evidence the circuit judge peremptorily instructed the jury to find for the appellee upon the notes, which were in no way controverted, and refused to submit appellants' claim for damages to the jury; and from the latter part of that judgment appellants prosecute this appeal.

The appellee's headquarters are in Chicago, with a warehouse in Louisville. As a rule it sells only to one dealer in a town so long as he is satisfactory, either party having the right to terminate the relation, at pleasure. Appellants do not claim that they had any right or authority to make contracts for the appellee; and, that being true, they were not appellee's agents. Appellee sold its fencing to appellants as it did to all purchasers, for a stipulated price, the title to the goods passing immediately to the buyer. The contract relied upon by the appellants is claimed to have been made on February 8, 1910, when Cassidy, appellee's drummer, called upon appellants at their store in Hardin, for the purpose of finding out why appellants had cut the price of fencing in some of their late sales. Appellants admitted that they had cut the price, as they had the undoubted right to do, but agreed that they would maintain a uniform price in the future, if Hughes, their competitor in the town of Hardin, would agree with them upon a price. Cassidy urged that this be done, and it finally was arranged and agreed upon between appellants and Hughes. Later in the day appellants ordered, through Cassidy, one car load of fencing for immediate delivery, saying that they would, in the course of the season, need probably as much as five additional car loads. Miller testified that he asked Cassidy if he would certainly deliver the one car load then ordered, and that Cassidy promised to do so. In this respect Miller is corroborated by one or more of his clerks. Cassidy, however, denies the agreement, and says that he took the order, as a drummer does in all such cases, subject to the approval of his principal, who declined to fill it. The regular order blanks ordinarily used by Cassidy contained a printed statement to that effect. Appel-

lants' case, therefore, rests upon the two propositions: (1) That Cassidy not only made the contract, but (2) that he had the authority to bind the appellee in so doing. If Cassidy had the authority, or if it was within the scope of his apparent authority, to make the contract relied upon, the circuit judge should have submitted the question of the existence of the contract to the jury; but, if Cassidy had no such right, and it was not within the scope of his apparent authority, then clearly the circuit judge properly refused to submit that question to the jury. That Cassidy had no such authority is made plain by the testimony of the chief officers of the appellee; and that it was not within the scope of his apparent authority is equally plain, from the nature of the transaction. As Cassidy was a drummer, and known only in that capacity to appellants, they were bound by the rule of law applicable to such cases.

In Charles Brown Grocery Co. v. Becket, 22 Ky. L. R., 393; 57 S. W., 454, it was said:

"The general rule is that the acts of an agent bind his principal within the scope of his apparent authority, but that the principal is never bound where the person dealing with the agent knows, or has reason to know, that the agent is exceeding his authority, or is perpetrating a fraud on his principal. The general rule in regard to the authority of commercial travelers is thus stated in the Amer. and English Enc. of Law, volume 6, page 227, 2nd Edition: 'In the absence of special authority to bind his principal the drummer can merely solicit and transmit the order, and the contract of sale does not become complete until the order is accepted by his principal ' It has been held that when the purchaser completes his transactions with the drummer no binding contract has been made, nor any sale, absolute or conditional; the purchaser may countermand his order at any time before the goods are shipped, or the house may refuse to accept the order, that it is a mere proposal to be accepted or not as the house may see fit, and may be withdrawn by the purchaser at any time before its final acceptance. (McKindly v. Dunham, 55 Wis., 515; Bensberg v. Harris, 46 Mo. App., 404.)"

And, in the later case of John Matthews Apparatus Co. v. Renz & Henry, 22 Ky. L. R., 1528; 61 S. W., 9, we said:

"We consider that the main and only necessary ques-

tion for us to determine is, whether the transaction in question was a contract, or merely an offer or order, which either party was at liberty to decline before final acceptance. The indisputable facts are that Russell, the traveling salesman of appellant, was a 'drummer,' a term that has come to have a fixed and proper place in our language, as well as in our law; that this transaction was the usual taking of an order by the drummer, and transmitting it to his 'house' for action, approval or rejection. The custom of so doing business is of such long standing, so extensive and so important in the commercial world, especially in the United States, that the courts will take notice of it. They have done so, and this court has.''

This rule was re-affirmed by this court in L. A. Becker v. Alvey, 27 Ky. L. R., 832; 86 S. W., 974; and in Courtenay Shoe Co. v. E. W. Curd & Son, 142 Ky., 223.

See, also, Singleton v. Fritsch, 4 Lea (Tenn.), 96; State v. Miller, 93 N. C., 515; 53 Am. Rep., 469; and 14 Cyc., 1087.

It follows, therefore, that since the appellee never accepted appellants' offer to buy, there was no contract between them with respect to the one car load of fencing. Appellants' contention that they had a general contract, under which they had the sole right to sell appellee's goods in that particular district, is not supported by any evidence whatever; on the contrary, the relations existing between the parties throughout their entire business transactions show that each transaction was merely a sale of goods, and not the creation of an irrevocable contract of agency. The mere fact that appellee, for business reasons, usually sold its goods to only one merchant in a town or district, did not, of itself, create any contractual obligation for future sales, or a continuance of that arrangement. As there was no competent evidence to sustain appellants' claim to such a contract, the circuit judge properly declined to submit that question to the jury.

Judgment affirmed.