## Mueller v. Nugent.

(Decided February 17, 1920.)

### Appeal from Jefferson Circuit Court (Common Pleas, Fourth Division).

Corporations—Contract of President for Sale of Real Estate.—A president of a corporation who, without authority from the company, enters into a contract with an agent to pay him a commission if he brings about a sale of real property of the corporation, and the agent finds a buyer and makes the trade, and the corporation refuses to convey, the president is liable to the agent for the commissions earned, although the president may have acted in good faith and in the belief that he had authority to act for the corporation in the sale of its real property.

BASKIN & VAUGHAN and HUMPHREY, CRAWFORD, MIDDLETON & HUMPHREY for appellant.

O'DOHERTY and YONTS for appellee.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming.

Appellant, Arthur E. Mueller, is the president of the Third and Jefferson Street Realty Company, incorporated, engaged in the real estate business in the city of Louisville, and appellee, Edward B. Nugent, is a member of the partnership firm styled R. I. Nugent & Company, also engaged in buying and selling real estate in said city. The former company owned a block of real estate at the corner of Fifth and Jefferson streets, which it desired to sell, and Nugent entered into a contract with the president of the corporation whereby Nugent was to undertake to find a purchaser for the property and, in case a sale was effected, was to receive the customary com-

mission that is paid real estate agents for making such sales in Louisville. Pursuant to this arrangement Nugent approached Dr. Irwin Abell and interested him in the property and finally obtained from Dr. Abell a written proposition to purchase said property, which proposition was addressed to R. I. Nugent & Company, agents, Louisville, Kentucky, and reads as follows:

"Louisville, Ky., Dec. 21st, 1916.

"R. I. Nugent & Co., Agents,
        Louisville, Ky.

"Gentlemen:

"For the property located on the southeast corner of Fifth and Jefferson streets. Lot to same being 66x210 feet to Green street, I will give $150,000.00 payable as follows:

"$42,000.00 bonds and bank stock at the market valuation on the day on which deed is transferred, and $3,000.00 in cash and notes to the amount of $150,000.00 bearing interest at the rate of 5% payable semi-annually, twenty-one notes of $5,000.00 each, payable on or before the first days of April, July, October and January of each year, from date of transfer for said property to me and to secure said notes will give lien on the property with the usual sixty days precipitation clause in the deed.

"Simultaneously on delivery of the deed the present owners of the property shall execute a ninety-nine year lease on the above property on the following terms: $7,500.00 yearly rental for the first ten years and $8,000.00 yearly rental for the remainder of lease, payable in monthly installments and in addition thereto all taxes of every kind, assessments etc., of every kind so that said rental is not subject to a deduction of any kind.

"The present owners of the land must agree to erect improvements on said land to cost not less than $200,000.00 on or before ten years from date of lease and for the faithful performance of said lease the present owners must agree to deposit in some local trust company, securities to the amount of $50,000.00 approved by me, to guarantee the fulfillment of said obligation with the condition that this security shall belong to me in event of failure to improve the lease hold as stated. Said securities shall be returned to you after the completion of the improvements on the property leased. The lease

shall contain the provision of the McKnight lease here-with appended.

"Title to above property to be clear of all encum-brance except as stated above, your clients to deliver to me the title insurance now on the above ground with-out cost to me.

"IRVIN ABELL."

When this proposition was presented by Nugent to Mueller, as president of the corporation, Mueller, acting apparently within the scope of his authority as presi-dent of the company and its active agent, made the fol-lowing exceptions, which amount to a counter proposi-tion:

"The above proposition is accepted with three ex-ceptions: In place of the consideration being one hun-dred and fifty thousand dollars, it shall be one hundred and sixty thousand dollars, the notes shall be one hun-dred and fifteen thousand dollars instead of one hundred and five thousand dollars and instead of seventy-five hundred dollars a year for the first ten years and eight thousand dollars per year for eighty-nine years, the rental shall be eight thousand dollars a year for the full term of ninety-nine years.

"THE FIFTH & JEFFERSON STREET REALTY CO.,
Incorporated.
"By Arthur E. Mueller, Prest."

With the indorsement of these three exceptions on the paper Dr. Abell accepted the same and made the fol-lowing indorsement upon the paper:

"I accept the above modifications.
"December 27, 1916.
"IRVIN ABELL."

The Fifth and Jefferson Street Realty Company, in-corporated, for which Arthur E. Mueller, its president, presumed to act in the sale of real property, repudiated the contract and would not convey the property, and when sued by Nugent for his commission for making the trade, defended upon the ground that Mueller as presi-dent had no authority to make such a contract on behalf of the corporation; that the board of directors had not conferred such power upon Mueller, and on a trial of that case judgment was entered for the corporation, Fifth and Jefferson Street Realty Company. There-upon this action was commenced by Nugent against

Mueller individually to recover the commissions, alleging all the facts above set forth, upon which he predicated the liability of Mueller for the value of his services in bringing about the trade. On the trial of this case before a jury Nugent recovered a verdict for $3,325.00 as commissions, and $200.00 for attorney fees expended in the trial of the first case brought to collect the commissions. Mueller appeals.

It is admitted that the corporation, Fifth and Jefferson Street Realty Company, owned the property which Nugent contracted to sell for the company's president to Dr. Abell, and it is satisfactorily shown that Dr. Abell was able, ready and willing to take the property at the price named in the contract, but that the corporation would not convey the property; and further that Arthur E. Mueller, as president of the corporation, had no power or authority to act for the corporation in making the sale, though he believed he had such authority and acted in good faith.

Is an officer of a corporation, who presumes to act for his company in the sale of real estate and who contracts on behalf of his company to pay commissions on the sale, if consumated, liable to the agent for the commissions agreed to be paid, if in truth and in fact the officer of the corporation had no authority to make such contract on behalf of his company and the company declines to be bound by the contract and convey the property, is the question to be determined here. It must be answered in the affirmative. And this is true in a case like the one stated above where the transfer was not made as well as in cases where the transfer is made by the corporation, but where it was not liable for commissions.

The text of Elliott on contracts, vol. 1, sec. 464, says: "A personal liability attaches to the agent if the agreement is in excess of his power and the other party thereto is led to believe in good faith that the agent possesses the requisite authority to make a contract, and this is generally held true, notwithstanding the agent may have in good faith and in the exercise of due care, on the ground that as between two innocent parties, the loss must be borne by him who caused it."

Judge Story in his work on the law of agency states the principle this way: "Whenever a party undertakes to do any act, as the agent of another, if he does not pos-

sess any authority from the principal therefor, or if he exceeds the authority delegated to him, he will be personally responsible therefor to the person, with whom he is dealing for or on account of his principal. There can be no doubt that this is, and ought to be, the rule of law in the case of a fraudulent representation made by an agent, that he has due authority to act for his principal; for it is an intentional deceit. The same rule may justly apply where the agent has no such authority, and he knows it, and he nevertheless undertakes to act for the principal although he intends no fraud. But another case may be put which may seem to admit of some doubt and that is, where the party undertakes to act as an agent for the principal, *bona fide,* believing that he has due authority, but in point of fact he has no authority, and therefore he acts under an innocent mistake. In this last case, however, the agent is held by law to be equally as responsible as he is in the two former cases, although he is guilty of no intentional fraud or moral turpitude. This whole doctrine proceeds upon a plain principle of justice; for every person so acting for another, by a natural, if not a necessary, implication, holds himself out as having competent authority to do the act; and he thereby draws the other party into a reciprocal agreement. . . . If he has no such authority and acts *bona fide,* still he does a wrong to the other party; and if that wrong produced an injury to the latter owing to his confidence in the truth of an express or implied assertion of authority by the agent, it is perfectly just that he who makes such an assertion should be personally responsible for the consequence, rather than that the injury should be borne by the other party, who has been misled by it. Indeed, it is a plain principle of equity, as well as of law, that where one of two innocent persons must suffer a loss, he ought to bear it who has been the sole means of producing it, by inducing the other to place a false confidence in his acts and to repose upon the truth of his statements.''

In one of the cases it was said: ''Even if wholly innocent of any wrongful purpose, his case falls within the familiar principle that when one of two innocent persons must suffer a loss, it should be borne by him who has been the means of causing it by inducing the other to confide in the truth of his representations.''

The authorities generally agree that where a person, not having in fact authority to make a contract as agent, yet does so under the *bona fide* belief that such authority is vested in him, is nevertheless personally responsible to those who contract with him in ignorance of his want of authority. This is declared to be the rule in the case of Farmers' Trust Co. v. Floyd, 12 L. R. A. 350.

In most of the cases the agent or officer pretending to have authority to act for his company is held responsible upon the ground that he warrants his authority to act for his principal and not upon the theory that the contract is his own, and this seems to be the soundest and best rule, though other courts hold him liable upon the ground of fraud.

In this case Mueller, president of the company, presumed to act for the corporation without its authority so to do. Nugent in good faith believed he had such authority because Mueller was in the office of the company as its principal agent. Mueller himself says he believed in good faith that he had authority to act for the company, but it turned out that he did not have such authority. Both these parties were innocent of any intentional wrongdoing, but as between the two the one who was guilty of the mistake which brought about the loss must sustain the burden. Mueller in holding himself out as agent of the corporation with power to sell and convey the real estate in question impliedly warranted his authority to so act and this warranty being breached Mueller is responsible to Nugent thereon for the amount of the commissions which by contract Nugent was to receive; and also such additional expenses necessarily incurred by Nugent in the prosecution of his claim for commissions, and this includes a reasonable attorney fee. We held in the case of Womack v. Douglas, 157 Ky. 716, that one who makes a contract placing real property in the hands of a real estate broker for sale, is liable for the whole of the compensation agreed to be paid, although he did not own the land he placed with the broker or only owned an interest in it, and was unable to carry out his contract because he did not own it, or because the other owners would not consent to the sale. This rule is applicable to the facts before us. Mueller was willing to convey the property and thought he had authority to act for the corporation, but his company declined to make the transfer although Nugent had performed his part of

the contract as broker and produced a purchaser, and had earned his commissions. While the company was not liable for the commissions, not having entered into any contract to pay same and Mueller, though its president, had no authority to act for it, yet Mueller was liable therefor to Nugent on the implied warranty which is drawn from his acts in making the contract, and Nugent is entitled to recover the same amount from Mueller that his contract named. Womack v. Douglas, *supra;* Rounds v. Alee, 116 Ia. 345; Oliver v. Morawetz, 97 Wis. 332; Gorman v. Hargis, 6. Okla 360.

Complaint is made by appellant of the instructions given by the court to the jury, and especially that the court did peremptorily instruct the jury to find for the plaintiff, but after carefully considering the facts to which the instructions apply, we conclude the court did not commit error.

The defendant in his original answer admitted that he made a trade with Nugent to pay him a commission on the sale of the property mentioned in the petition, but at the time of the trial moved to withdraw its answer and to substitute an answer denying that it had made such contract. At that time Dr. Abell, an important witness for the plaintiff, was in the army and his address was unknown. The court, after due consideration of the matter, overruled the motion of the defendant to withdraw the second paragraph of its original answer as well as its motion to file the amended answer. Trial courts have a broad discretion in the matter of allowing the filing of amended pleadings. Such pleadings may be filed at any time when in the opinion of the court the ends of justice require, but when the filing of such a pleading, after the case is set for trial or the trial has commenced, will put the other party to a great disadvantage on account of the absence of witnesses, the court should not in the interest of a fair deal allow such pleading to be filed. We do not therefore, think the court abused a sound discretion in declining to allow the amended answer to be filed.

Appellant insists that the contract made between Dr. Abell and the realty company was not enforceable, being unilateral, but we find no merit in this contention.

As a matter of fact the corporation refused to carry out the contract to sell and convey the real property which its president had entered into in its name. Dr.

Abell was willing to perform his part of the contract and of this there is no doubt. There is no merit in appellant's contention that Dr. Abell might have declined to perform his part of the contract when it is clearly shown that he was anxious so to do. Why quibble about what might have happened under different circumstances when the facts establish the good faith of Dr. Abell and Mr. Nugent with respect to this contract?

Perceiving no error to the prejudice of appellant the judgment is affirmed.

Judgment affirmed.