## Junius H. Stone Corporation v. Princeton Ice and Storage Company.

(Decided January 15, 1926.)

### Appeal from Caldwell Circuit Court.

1.  Principal and Agent—No Sale or Contract Results from Giving Order to Traveling Salesman Until Accepted by Seller.—No sale or contract results from buyer giving order to traveling sales-

man until acceptance by seller, as salesman's authority, in absence of express authority to contrary, is limited to soliciting orders and transmitting to principal.

2.  Sales—Seller's Acknowledgment of Receipt of Order is Not an Acceptance of Order.—Seller's acknowledgment of receipt of order given to salesman does not constitute an acceptance of order so as to create a binding contract.

3.  Sales—Implied Warranty that Goods Sold Will be True to Name and be of Quality Designated by Terms Used by Seller.—There is implied warranty that goods sold will be true to the name and be of quality designated by terms used by seller.

4.  Sales—Implied Warranty of Conformity to Sample.—There is an implied warranty that goods will be of quality of sample used in selling.

5.  Appeal and Error—Charge that Sale was by Sample Not Prejudicial, where Seller Handled Only One Kind, which would be Same as Sample Shown Purchaser.—Charge of court that sale was by sample held not prejudicial error, where seller testified that they only handled the one kind or quality of goods, which would be same kind as sample shown to purchaser by agent.

6.  Sales—Buyer May Return Goods and Sue for Purchase Price, or Retain Goods and Sue for Damages on Breach of Warranty.—Buyer of cork board on breach of implied warranty had right, either to return goods and sue for purchase price, or retain goods and sue for any damages which he sustained by reason of such breach of warranty.

7.  Appeal and Error—Appellant Cannot Complain of Action of Trial Court in Submitting Issues Requested by it.—Appellant, having submitted issues by instructions offered, which were given, cannot on appeal complain of such action of trial court.

BRADSHAW & MACDONALD amici curiae.

JOHN C. GATES for appellee.

OPINION OF THE COURT BY JUDGE DIETZMAN—Affirming.

The appellee, Princeton Ice and Storage Company, has for a number of years been engaged in the business of cold storage and of the manufacture of ice and ice cream. In November, 1922, it determined to rebuild its plant. Among the materials necessary for the purpose was cork board to be affixed to the walls and ceilings of the proposed new building for the purpose of insulation. From the record it appears that the cork board required by appellee is manufactured in Spain, and that it is sold in this country through a comparatively small number of dealers. Appellee got in touch with two of these deal-

ers, one of whom was the appellant herein. The latter then sent its traveling salesman to see the appellee. This salesman brought with him and showed to appellee's president a sample of pure compressed cork board, which he said was made from the parings of champagne corks, and which was of compact texture, entirely free from foreign elements, and of very high grade and quality. Although its cost was somewhat higher than the cork board offered by the other dealer, appellee was induced by these representations of appellant's salesman to select appellant's cork board for its new building, and it gave the salesman on November 17, 1921, an order for its needs. When giving this order, appellee knew that appellant proposed to fill it from a cargo of cork board then on the high seas, destined for the port of New Orleans, and that appellant, since it had no storage facilities at New Orleans, proposed to reship at once to appellee such cork board on its arrival by boat. Prior to the signing of the order, the freight rate from New Orleans to Princeton, Kentucky, where appellee's plant is located, was ascertained and the order itself provided that the sale price of the cork board was f. o. b. New Orleans, with delivery "February, 1922, or sooner."

As a traveling salesman's authority is, in the absence of express authority to the contrary, limited to the soliciting of orders and transmitting them to his principal, no sale or contract resulted from the appellee thus giving this order until it was accepted by appellant. Nolin Milling Co. v. White Grocery Co., 168 Ky. 417, 182 S. W. 191. Nor did appellant's acknowledgment of the receipt of this order on November 22, 1921, constitute an acceptance of the order so as to create a binding contract. Courtney Shoe Co. v. E. W. Curd & Son, 142 Ky. 219, 134 S. W. 146.

Matters remained in this state until the fourth of January, 1922, when appellant wrote the appellee that it had been unable after due diligence to ascertain the facts to convince itself as to the credit standing of appellee, and that before it accepted appellee's order it wished certain information regarding the latter's financial standing and prospects. A number of letters then passed between the parties, in the course of which appellee made a full disclosure concerning its financial affairs and in which it further appeared that appellee had by January 27, 1922, wrecked the old building and laid the foundation for the new, but, on account of weather conditions, was

unable to push the work further, and hence would not be ready to receive the cork board before the middle of the following March. Appellant finally accepted appellee's order, making no objection to this change of the date of delivery, other than to say that the shipment would come forward from Jersey City. On appellee's demurrer to Jersey City as the reshipping point in place of New Orleans, appellant replied that the New Orleans cargo could not be held until March as appellant had no storage facilities there, but it assured appellee that the freight rates from Jersey City were about the same as those from New Orleans, to which appellee responded that if this was so, it was immaterial to it whence the cork board was shipped.

On February 27, 1922, appellee forwarded to appellant a check for five hundred dollars, together with revised dimensions of its new plant, which necessitated some changes in the amounts of the various sizes of the cork board ordered. Thereupon appellant made out an entire new order incorporating these changes, fixing prices as "f. o. b. cars Jersey City, N. J.," and describing the material as "pure compressed cork board, non-plus-ultra," and sent it to appellee for its signature. The appellee returned this order with the statement that it already had a contract with appellant, which at the time it was entered into was understood to be subject to change in amount and size of the cork board, and as the revised dimensions made no alterations other than in sizes and amounts of the cork board, there was no need of a new contract. Appellee also urged appellant to send the cork board on at once as it would be wanted very soon. Appellant on March 10, 1922, again returned the new order with a very noncommittal letter, except that it insisted that the old order had been finally accepted by it on the basis of shipment, f. o. b. New Jersey, and asked appellee to sign it. This appellee did, and returned it with a letter dated March 13, 1922, in which it stated that it noted the new order called for "pure compressed cork board, non-plus-ultra," and that it wanted to know what this term signified, but that it wanted appellant's best cork board, such as had been offered to it and which it had purchased the preceding November. Appellee again urged a prompt shipment of the cork board. Appellant took no further notice in its correspondence of the character of the cork board covered by the order and finally shipped it during the last week in March from Philadel-

phia. It arrived in Princeton about April 8th. When appellee went to get it from the railroad, it found that the freight amounted to $608.65, whereas, had the shipment come from New Orleans, the freight would have been only $183.33. It may here be said that although the shipment came from Philadelphia instead of Jersey City as provided in the order, no contention is made in this case about such change, as the freight rates from these two eastern points seem to have been the same. It is admitted by the railroad that an error was made in the freight from Philadelphia and that the true freight should have been $354.02. The railroad is ready to make reparation of what it admits to be the excess freight it collected, but there is still $170.69 more freight which appellee paid than it would have had to pay had the shipment moved from New Orleans. On opening the shipment, appellee claims that it discovered that the cork board was of very inferior quality, that it was overbaked and full of charcoal, that there were present in it many foreign and gritty substances, including tin, and that it was brittle. Appellee also says that after it had been affixed to the walls of the building it checked and cracked in such fashion as to be of very little use as insulation and indeed as to permit moisture to collect, condense and then freeze on the walls in such quantity that these concrete walls were caused to expand and contract so much that they had also cracked. Immediately on inspecting the board appellee wired appellant about the condition in which it says it found it, and suggesting that appellant send a man to verify such inspection. Appellant wired back that it had inspected the cork board before it was shipped and that if appellee did not want the board it should wire at once as no adjustments would be made. Appellee was then in dire need of the cork board in order to go ahead with its building, and for that reason went ahead with its use. In September, 1922, appellee made appellant a further payment of $500.00 on the cork board, leaving a balance of $1,225.00 still due. Appellee declined to pay this balance, and thereupon appellant brought this suit for the same. Appellee counterclaimed for damages based on claims of excess freight it had been compelled to pay, of inferior quality of the cork board, of delay in finishing the building due to delay in shipping the cork board, and of damages done the concrete walls of the building. On the trial, after appellant's motion for a peremptory instruction had been overruled, it of-

fered a series of instructions submitting to the jury the various claims of appellee above mentioned. All of these instructions were given by the court except the one bearing on the quality of the cork board, in lieu of which an instruction offered by appellee was given. Thereupon appellant made a motion that the court harmonize all the instructions as given, which the court declined to do. The jury returned a verdict for appellee on its counterclaim in the sum of $1,200.00. This verdict was later explained by an affidavit signed by all the jurors and filed by appellant, in which they stated that they had not understood that they had anything to do with passing on whether or not appellant was entitled to the balance due on the cork board. It being admitted by all the parties that appellant was so entitled, judgment then was entered for the appellant for the difference between the balance due on the cork board and the counterclaim allowed by the jury. From this judgment this appeal is prosecuted.

Appellant first insists that instruction number one offered by appellee and given by the court, which submitted to the jury the question of the quality of the cork board, was erroneous in that it was based on the theory that the sale here involved was a sale by sample. Appellant contends that although the contract of November 17, 1921, may have been a sale by sample, this contract was abandoned and in fact superseded by the contract of March 13, 1923, which was a sale by designation and not by sample. There is little merit in this position of appellant. In signing the order of March 13, 1923, appellee plainly told appellant that it knew nothing of the designation "non-plus-ultra" and that it understood that the cork board it was ordering was of the kind as had been shown it last November. With this statement before it, appellant accepted and filled the order without objection or demurrer, and it cannot now say that the sale was not a sale by sample. Appellee was insisting there was no need for a new contract; that all that was necessary was to revise the old one. Appellant for reasons of its own was insisting on a new order. Appellee informed appellant of its ignorance of the terms describing the cork board inserted in the new order and of what it understood the term to mean. If appellee was in error about this, appellant was under the duty to so inform it. No doubt the reason appellant never took issue with appellee on this point is because, as it says in its testimony, it never

had or dealt in but one kind or quality of cork board, and that the sample shown appellee and the non-plus-ultra cork board are all the same. Indeed, appellant, in its testimony, insisted that the cork board shipped, a sample of which it had procured from appellee, was in all respects like the sample shown appellee the preceding November. If, as appellant says, the term "non-plus-ultra" designates the same kind of cork board as that of the sample shown appellee in November, 1921, there is an implied warranty that the goods sold will be true to the name and be of the quality designated by that term. Hobdy & Read v. Siddens, 198 Ky. 195, 248 S. W. 505. Hence, it little matters whether the court told the jury that this was a sale by designation or a sale by sample, for the quality meant in either case was the same, and the implied warranty that the goods would come up to such representation, whether by designation or sample, was the same in either case. As to sale by designation see Hobdy & Read v. Siddens, *supra*. As to sale by sample, see Sachs Shoe Co. v. Maysville Suit and Dry-goods Co., 201 Ky. 239, 256 S. W. 401. Hence it is plain the court committed at least no prejudicial error in assuming in the first instruction that this was a sale by sample rather than by designation.

The next complaint of the first instruction is that the court by it permitted appellee to recover as damages the difference between the market value of the cork board as shipped and that of the cork board as represented. Appellant says that as appellee retained and used this cork board, it cannot now claim damages on account of its inferior quality. As to this, however, appellant is again in error. As this was a sale by designation or by sample, which of the two, as we have seen, does not matter, there was the implied warranty that the goods would come up to the designation or sample. If there was a breach of this warranty, appellee had a right either to return the goods and sue for the purchase price it had paid, or it could retain the goods as it did and sue for any damages which it sustained by reason of such breach of warranty. Frick & Lindsey v. Holbrook, 202 Ky. 416, 259 S. W. 1033. The court, then, correctly submitted the issue of quality to the jury by this first instruction.

With reference to the other claims of appellee set out in its counterclaim and which appellant now says it was error to submit to the jury, especially such claim as to

delay in shipment, it need only be said that appellant itself submitted such issues to the jury by the instructions it offered and which were given by the court. Having done so, it may not now complain of such action of the trial court. Chesapeake & Ohio Ry. Co. v. Stapleton, 154 Ky. 351, 157 S. W. 702; Louisville & Nashville R. R. Co. v. Thomas, Admr., 170 Ky. 145, 185 S. W. 840; 171 Ky. 471, 188 S. W. 463; American Ry. Express Co. v. Lancaster, 199 Ky. 584, 251 S. W. 670; Chesapeake & Ohio Ry. Co. v. Boren, 202 Ky. 348, 259 S. W. 711.

No error appearing prejudicial to appellant's substantial rights, the judgment of the lower court is affirmed.