## New York Canners, Incorporated, v. Rucker.

(Decided March 24, 1931.)

TODD & BEARD for appellant.

STANLEY TRENT for appellee.

OPINION OF THE COURT BY JUDGE RICHARDSON—
Reversing.

On March 12, 1926, the appellant was engaged in manufacturing canned goods in the state of New York, and selling them through brokers in Kentucky. The appellee was engaged in the wholesale grocery business in Lawrenceburg, Ky. Pickrell, Craig & Company was a firm with its home office in Lexington, Ky. Its business was to solicit and to secure written orders by and through its representatives from wholesale grocers for manufacturers' goods. Simultaneously, and as a part of the transaction in which it secured such orders, it made a contract in parol with the wholesaler whereby it would agree to send its salesmen or detail men, who were kept employed by it for that purpose, into his territory, who would sell to his trade his goods covered by his order to the manufacturer, so that by the time the goods were shipped, they would be 'contracted to his retail trade.

In case it secured an order and made such contemporaneous contract with the wholesaler, the appellant paid it "double brokerage," or 6 per cent. of the net amount of the order. In case it secured an order without at the same time making such an arrangement with the wholesaler, then the appellant paid to it only 3 per cent. of the net amount of the order. The written order which the wholesaler was required to sign contained the terms, conditions of the purchase, the specifications of the goods ordered, the character, description, quantity, and prices thereof, but it made no reference to the arrangements made with Pickrell, Craig & Company. On the execution and delivery of the order by the wholesaler to the representative of Pickrell, Craig & Company, it was transmitted by the firm to the manufacturer for its approval and signature. If it was approved, it was

signed by an official in duplicate. One copy was retained by it and the other mailed to the wholesaler.

In 1925, the appellee signed and delivered to a representative of Pickrell, Craig & Company an order to the appellant for a car of canned goods, which it accepted as per the terms thereof. At the time that order was obtained, Pickrell, Craig & Company made an oral contract with the appellee, by which it agreed with him to furnish him, in his territory, its salesmen or detail men to canvass his trade, and to sell to his trade the goods covered by the order.

Its salesmen in 1925 secured orders from the retail merchants, customers of the appellee, for ——————— cases of canned goods covered by his 1925 order. Some time after the first of the year 1926, Kuykendall, as a representative of Pickrell, Craig & Company, sought the appellee for the purpose of securing his order for another car of appellant's canned goods. He declined to give it. On March 12, 1926, Kuykendall mailed to him an order dated that day with a request to him to sign it, and again he declined. Some time during the following June, Kuykendall called on him at his place of business at Lawrenceburg to get him to sign and deliver the order. He again declined to do so, until, as he claims, an oral contract was made between him and Kuykendall as a representative of Pickrell, Craig & Company. His statement of the transaction is so vital and important to the main issue in the case, we prefer to give it in his own language, which is as follows:

"When he (Kuydendall) came over to do the detail work me and him couldn't agree on the car, never had agreed, and we had talked it over several times, I told him I would refuse to buy a car in 1926; the morning he came over and I signed his paper, he made me this proposition, he says, 'if you will sign for another car, I will sell the entire carry over of the 1925 car and more than 50% of this car of 1926, and if I fail to do it, it will not be binding on you.' I says, 'Kuykendall, I will be willing to take you up on that basis,' I says, 'I will sign these papers, not as a contract, but to become a contract upon your fulfilling your obligations and promises,' he says, 'leave it to me, leave it to me,' repeated it several times. . . ."

His statement is corroborated by his employees who were present at the time.

Kuykendall gives his version of the transaction as follows:

"Q. He alleges in his answer, contends, that that contract was made and signed conditionally, that you would sell the goods that he had on hand, the old goods that were there, and fifty per cent. of this car and if that was not done, if it was not sold and the orders delivered to him, that this contract was not binding, was anything of that kind ever done? A. *It could have been done,* it wasn't done under this contract, it wasn't done in this case.

"Q. I will ask you to tell what was said, if anything about getting orders for this car, the new car of goods? A. Well, we kept at that time a force of men, who worked with the jobbers as salesmen.

"Q. Who do you mean by we? A. Pickrell, Craig & Company, we paid these men and they worked with the jobber salesmen, that is, in calling on the retail trade and selling the New York Canner's line of goods, in this particular case we promised him enough work to cover his trade.

"Q. Did you for making this sale, did you get a certain per cent? A. We got a per cent.

"Q. Now then did the New York Canners have anything to do with making any promises about putting out men and selling *that,* or was it Pickrell, Craig & Company that put those men out? A. Never made any promises to sell anything.

"Q. What was said by you as to what Pickrell, Craig & Company would do, your firm? A. I told Mr. Rucker that we would thoroughly cover his trade, in fact we did cover it almost twice within two weeks and four weeks detail work, two men in one.

"Q. Who paid for those men? A. We paid for them.

"Q. You mean Pickrell & Craig paid for them? A. Yes sir, they were our detail men.

"Q. Did the New York Canners have anything to do with the hiring or paying of these men at all, the field men? A. *I don't know how to answer that,* we hired the men, they didn't hire them, we worked those men, they were our own men we paid them ourselves. . . ."

"Q. Was there any conditions whatever when you made for the New York Canners as to getting these orders for him, did you promise to do that at all, if he would sign the contract? A. No condition at all on this *contract*.

"Q. That other stuff that was there, had you sold him anything the year before under the same arrangement? A. .Yes sir, we sold him the year before under the same arrangement, the detail work was given the year before just like in this case."

Cross-examination:

"Q. How long did Pickrell & Craig Co., represent the New York Canners? A. I believe about five years.

"Q. As their selling agent where? A. In Kentucky.

"Q. Under what sort of a contract? A. What do you mean?

"Q. How were you paid? A. We received a brokerage on cars we sold.

"Q. How much? A. Well, during the time we had the detail men we got 6% that's called 'double brokerage' and three per cent. on ordinary brokerage."

No correspondence occurred between appellant and appellee prior to the shipping of the car of goods. Mr. Jones in his testimony explains certain figures appearing on the written order, which was introduced in evidence, by saying they indicate dates on which appellant had addressed communications to the appellee regarding specifications of the goods embraced by the order. Kuykendall states that he talked to the appellee a number of times in regard to the specifications of the goods to be shipped as per the terms of the order, and that appellee stated to him that he had not decided the matter and did not know whether he was going to change them or not. He wanted to go to Louisville to talk to Mr. Pickrell. Kuykendall states that in October in the office in Lexington he stated that he would like to get that car changed; that he was heavily stocked with canned goods and did not know whether he would be in a position to use this additional car or not. The appellee denied that he had any conversation with Kuykendall at Lexington. He says that he went to Louisville in September, visited the office of Pickrell, Craig & Company, explained to Mr.

Pickrell the agreement he had with Mr. Kuykendall at the time he signed the order, and notified him he would not accept the car.

On November 6, 1926, the appellee signed and mailed the following letter:

"Pickrell, Craig & Co.,
"Louisville, Ky.

"Dear Sir:

"Referring to our conversation some time ago in regard to the car of canned goods from the New York Canners Mr. Kuykendall promised me several times to come over to see me regarding specifications, as I had so much to carry over of the 1925 car and our sales fell off so much in the 1926 canvas. Therefore it is impossible for me to handle the 1926 car to any advantage.
"Very truly yours, J. H. Rucker."

About December 3d or 4th the car of goods arrived in Lawrenceburg. The appellee refused to receive or to accept it. Thereupon he sent a telegram and letter to the appellant, which are as follows:

"December 4th, 1926.
"New York Canners,
"Rochester, N. Y.,

"Gentlemen:

"This is to confirm the following telegram sent you by me this morning: 'New York Canners, Inc., Rochester, N. Y. Car refused you see broker letter will follow:

"J. H. Rucker."

"In this connection beg to advise that this car is refused because of the fact that Mr. Kuydenhall, representative of Pickrell & Craig agreed that they would sell not less than 50% of this car, also to clean up entirely my holdings of the carry over of the 1925 car and in case I should fail to do this I would not be obligated to take this car. In other words he induced me to sign the purported contract for this car under the distinct understanding and agreement that same was not to become and be binding on either of us until the agreement above mentioned had been fully performed.

"These parties were notified time and time again that because of their failure in their undertaking, I did not expect to take this car and was not obligated to do so and this notice to them was in ample time for them to have protected you.

"All in all it seems these men are operating in such a way as to utterly disregard your interest and my rights, and while I regret the matter very much, I cannot see my way clear to do other than what I have done.

"I invite your fullest investigation of this matter.

"Yours truly, J. H. Rucker."

On account of his refusal to accept the car, the appellant ordered it shipped to Pickrell, Craig & Company at Louisville, Ky., for storage and redistribution. It expended for freight and demurrage $448.78. It resold the goods at a loss of $740.70. The expense of the resale was $50. A total loss of $1,431.17. This action was instituted to recover of appellee this amount.

On a trial before a jury a verdict was rendered in favor of appellee. Judgment was entered from which this appeal is prosecuted.

The facts in this case distinguish it from an ordinary transaction of a commercial drummer merely soliciting of a retail merchant, an order to his house for goods. Courtenay Shoe Co. v. Curd & Son, 142 Ky. 219, 134 S. W. 146, 38 L. R. A. (N. S.) 903; Ryan & Miller v. American Steel & Wire Co., 148 Ky. 484, 146 S. W. 1099; Nolin Milling Co. v. White Grocery Co., 168 Ky. 424, 182 S. W. 191; J. H. Stone Corporation v. Princeton Ice & Storage Co., 212 Ky. 404, 279 S. W. 642.

The appellee cites J. I. Case Threshing Machine Co. v. Barnes, 133 Ky. 321, 117 S. W. 418, 19 Ann. Cas. 246; Pickrell v. Wilson, 199 Ky. 20, 250 S. W. 135; Lincoln v. Burbank, 218 Ky. 89, 290 S. W. 1081; Pickrell v. Wilson, 217 Ky. 430, 289 S. W. 1100. The facts of this case distinguish it from those cases, in that the representative of the seller did not in any of them by any arrangement with the purchaser of the articles contracted for, with the consent of his principle, become interested in the transaction, whereby his compensation was increased or doubled.

Pickrell, Craig & Company, by arrangement between it and appellant, received double brokerage from appel-

lant where arrangements were made with the wholesaler or jobber by which it furnished him salesmen or detail men to take orders from his trade for its goods sold on orders of the character and nature of that secured by it from the appellee. The fact that appellant agreed to pay double brokerage to Pickrell, Craig & Company in the event it obtained the wholesaler's signature to such an order and simultaneously entered into such contract with him, tends to establish that the appellant agreed, in advance, to the making of such contract. In such transaction the written order was not intended, by the parties, to, and did not, embrace all terms of both contracts between the parties. The appellant attempts to rescue its written order from the real transaction and to enforce it against the appellee according to its exact terms and conditions without respect to all of the obligations of the parties arising out of the real transaction between them at the time the order was signed and delivered. It relies upon an universal rule, i. e. when a legal act is reduced into a single memorial, all other utterances of the parties on that topic are legally immaterial for the purpose of determining what are the terms of their contract. This general rule may be used as a shield but not as a sword. To prevent its being used as such a weapon, courts recognize certain fixed and well-established exceptions to it. Some of which are: (a) "Oral evidence that a written contract was delivered on condition precedent that it should not take effect until the happening of a certain contingency does not contradict or vary the terms of the writing or introduce any new conditions therein, and is admissible to show no valid contract was made" (Pickrell v. Wilson, 199 Ky. 20, 250 S. W. 135; Pickrell v. Wilson, 217 Ky. 430, 289 S. W. 1100; J. I. Case Threshing Machine Co. v. Barnes, supra); (b) where it is both alleged and proved that there was fraud on one part or mutual mistake of the parties (Gus Datillo Fruit Co. v. Ill. Central R. R. Co., 222 Ky. 41, 299 S. W. 1089; Southern, Billiard & Supply Co. v. Shepherd, 232 Ky. 489, 23 S. W. (2d) 914; J. B. Colt Co. v. Brown, 224 Ky. 438, 6 S. W. (2d) 473); (c) where there is a distinct and separate transaction between the same parties, or between them and other parties, merely coinciding in time, and inextricably interrelated with the subject-matter embraced in the writing, but which was not intended by the parties to be covered by it (Wigmore on Evidence, vol. 4, sec. 230).

In the present case there is no allegation made by the appellee of fraud on the part of the agent of appellant and Pickrell, Craig & Company, or that any condition or provision was omitted or left out of the order by a mutual mistake of the parties. But under either or both of the other two exceptions, oral evidence was admissible. The appellee relies on his allegation of a condition precedent as his defense against the order set out in the petition, which, if sustained by the evidence, is complete. The appellant insists that he failed to show authority of the agent who secured his order, to enter into an arrangement by which the order was not to be binding until a certain condition precedent had been complied with. The evidence offered by both appellant and appellee shows that the agent had authority to secure the order. It being thus shown that the agent had such authority, the burden was on appellant to allege and prove that his authority was restricted or limited, and, therefore, was not sufficient to authorize him to enter into the arrangement set up by the appellee as his defense. Southern Pac. Co. v. Duncan, 16 Ky. Law Rep. 119; Wheat v. Bank of Louisville, 5 S. W. 305, 9 Ky. Law Rep. 738; Mueller v. Nugent, 187 Ky. 61, 218 S. W. 730.

In its reply, the appellant traverses the allegations of the answer, and alleges in this language that ''the written contract filed with the petition is the whole contract and that no one had any right to alter or change said contract, and that it was not changed or altered, and the same was not made on any condition whatever except as set out in said contract.''

This allegation is no more than alleging affirmatively that which was previously denied and is not sufficient to make an issue as to the authority of the agent who secured the order. Columbia Life Ins. Co. v. Tousey, 152 Ky. 447, 153 S. W. 767. No issue was thereby presented by the pleadings. The failure of Pickrell, Craig & Company to secure orders from the appellee's customers was shown merely as a part of his defense that the order was executed and delivered by him on the alleged condition precedent set up in the answer.

The appellant complains of the instruction of the court given to the jury. It offered a peremptory instruction at the close of defendant's evidence. The court refused to give it. The evidence heard by the jury was conflicting, and the authority of the agent to secure

the order was conceded in the evidence offered by both parties. No issue was raised by the pleading as to the limitations or restrictions of his authority, therefore, the court did not err in overruling the motion for a peremptory instruction. The court on its motion gave to the jury an instruction directing it to find for plaintiff, unless it believed from the evidence that prior to the signing of the order, the agent agreed to procure orders for 50 per cent. of the car of goods covered by the order of 1926, all of the unsold goods covered by the order of 1925, and that if it failed to do so to find for the defendant. This instruction inadvertently fails to present the defense set up in the answer, and to which the evidence was directed. The court should have instructed the jury to find for plaintiff, unless it believed from the evidence that the written order for appellee's goods described in the pleading and the evidence was signed and delivered by defendant and received by the agent of plaintiff on an agreement between them that it should not take effect or be binding on him until orders were secured by appellant or its agent, Pickrell, Craig & Company, for 50 per cent. of the goods covered by the order of 1926, and the entire carry over on hand and in stock, and covered by the order of 1925, and further believed from the evidence that it and its agent failed to and did not secure such orders for such per cent. thereof, in this event to find for defendant. The appellant complains because the instruction given by the court to the jury fails to require the orders of the retail merchants to be secured within "a reasonable time." It cites in support of this contention J. I. Case Threshing Machine Co. v. Barnes, supra.

This contention overlooks the fact that the appellee made his contract with Pickrell, Craig & Company at the time the order was signed and delivered by him to it, and that in carrying out the contract it was a representative of the appellant, so far as the appellee was concerned, and that the appellee had the right to look to and depend upon Pickrell, Craig & Company not only to comply with the contract, but to report it to its principal, the appellant. The appellant evidently had some method of keeping up with Pickrell, Craig & Company and of ascertaining when it secured an order on which it would be obliged to pay double brokerage, or that such order had been taken by it.

The appellee had the right to assume that Kuykendall would report the arrangement with him to Pickrell,

Craig & Company, and that it would report accordingly to appellant. The fact that Pickrell, Craig & Company did send its detail men, and kept them for a short time on their work required to carry out its contract with him, was calculated to induce him to believe that the appellant, interested in the arrangement, had sufficient knowledge thereof to protect itself against a violation thereof by Pickrell, Craig & Company.

The appellant testifies that he informed Mr. Pickrell, of the firm of Pickrell, Craig & Company, of his intention not to accept the car of goods because of the breach of the contract with him. Pickrell does not deny appellee's statements. This occurred in ample time for his firm to have informed the appellant of the appellee's intentions before the car was shipped. If the plight of the appellant and its incurring of the damages sued for resulted from a breach of the contract to which these three were parties, even though the making of it was coincident in time with the signing of the written order and was inextricably interrelated with the topic of the written order, and not intended to be covered by it, and such contract was violated or breached by Pickrell, Craig & Company, then it, and not appellee, should respond in damages to appellant.

The contract between appellee and Pickrell, Craig & Company, whereby it agreed to furnish its detail men to secure orders for him from his trade, was for the benefit of appellant as well as for the appellee, and was evidently made with its consent, for it was under a contract to pay Pickrell, Craig & Company double brokerage therefor. The purpose of such an arrangement was to hurry up the sales of the appellee, and was calculated to call for a repeat order to the appellant. Thus, both appellant and appellee would derive a benefit in their respective business from the work of the detail men of Pickrell, Craig & Company.

The answers made by Kuykendall in his testimony, which we have quoted and have italicised, indicate very strongly that the agreement between him and appellee was entered into as claimed by the appellee. Pickrell, Craig & Company is not a party to this action, and we do not pass on any question that might be presented in an action against it by either the appellant or the appellee for its breach of contract, but suffice it to say that if the contract was made as claimed by the appellee with the agent of Pickrell, Craig & Company and it breached

such contract, causing damage to or the incurring of expense by either the appellant or the appellee, the question may be determined in a proper proceeding in this action or in an independent action instituted for that purpose.

Wherefore the judgment is reversed, and cause remanded for proceedings consistent with this opinion.