## Torson Construction Co. v. Grant.

### (Decided Dec. 15, 1933.)

W. W. DOWNING for appellant.
HUBBARD BROTHERS for appellee.

OPINION OF THE COURT BY JUDGE RICHARDSON—Affirming.

This appeal requires a review of a trial before a jury of an action involving the breach of a contract of an employer and an employee for the latter's services at an agreed price for the period of one year.

Claude Grant, a resident of Louisville, Ky., about the 1st of July, 1931, was an electric and acetylene welder with 17 or 18 years of experience, and employed by the Lockjoint Pipe Company, working ten hours a day at 75 cents an hour. His job was to continue for about four months. On July 16, 1931, the Torson Construction Company was engaged in work when one of its welders ceased to work for it. Its work required that his place be filled. Leslie Craig was superintendent of the Torson Construction Company, with authority to hire and discharge employees. C. T. Kinsey, an employee of the Torson Construction Company, was a friend of Claude Grant. Through Kinsey, Leslie Craig learned of Grant's qualifications. Craig and Kinsey went to the home of Grant, and on receiving information of his whereabouts, went together to a point on the Ohio river, where Grant, Carter, and Nielson were engaged in fishing, for the purpose of Craig employing Grant for the Torson Construction Company. On arriving at the river's edge, where Grant was, Grant claims that Craig sought to employ him for the Torson Construction Company, when he informed Craig that at that time he was employed by the Lockjoint Pipe Company, making good money and was satisfied with the work and his employer, and was getting along all right, and that his job would last four months, and when he informed Craig the time his job would continue with the Lockjoint Pipe Company, Craig proposed to employ him for the Torson Construction Company for a period of one year at 75 cents per hour. Thereupon, he, Grant, stated to Craig that he would think it over, and, if he decided to take the job, he would "come down in the morning" and go to work; that next morning he decided to accept Craig's proposition, and, after so deciding that morning, he went to the place of business of the Torson Construction Company and began to work on July 17, 1931. He continued to work for the company about a month or six weeks, or until the 5th day of August, when C. M. Torson, a

member of the firm of the Torson Construction Company, discharged him. After his discharge he obtained work at intervals with the Lockjoint Pipe Company, Ætna Oil Company, Standard Oil Company, and Ford Motor Company, and earned by his services for them, $770.50, between the date he was discharged and the 17th day of July, 1932. His earnings per the contract of the Torson Construction Company, except for his discharge, would have amounted to $2,212.50 for the balance of the period of his contract. At the time it discharged him, the Torson Construction Company issued and delivered to him a check dated July 24th for 62 hours, at 75 cents per hour, on which was written the words, "in full."

After the expiration of the year, Grant brought this suit to recover the $2,212.50, the difference between the contract compensation and the amount he had earned from the date of his discharge to the date of the expiration of the contract, alleging that his contract began on the 17th day of July, 1931, and expired on the 17th day of July, 1932. The answer of the Torson Construction Company contains a denial and an affirmation that, under the contract of employment of Grant, it was privileged to terminate the employment at any time and also that Grant had the privilege of abandoning it.

On a trial with the intervention of the jury, a judgment was rendered in favor of Grant for $731. For reversal the Torson Construction Company insists that the intention of the parties to the contract of employment was that Grant was employed for no definite period; that the contract lacks mutuality; that the employer had the right to terminate it if the services of Grant were not satisfactory; that the contract was to begin at a future date and run one year, and, since it was not in writing, it is within the statutes of frauds (Ky. Stats., sec. 470); that the acceptance of the check, with the words "in full" marked thereon, is conclusive evidence of a settlement of the claim now asserted by Grant; that the superintendent was without authority to make the contract and the instructions of the court are erroneous.

Grant's narration of the conversation between him and Craig, at the time Grant claims they agreed on the

terms of the contract, the period for which it was to run, and the privilege of Grant later determining whether he would accept the employment, is corroborated by the testimony of Carter and Nielson. It is contradicted by that of Craig and Kinsey. Such conflicting evidence as to the contract, its terms, and conditions and the period of time for which he was employed, made an issue as to the same for the jury. Ross v. Eagle Coal Co., 237 Ky. 660, 36 S. W. (2d) 48. Torson and Craig admitted that Craig was superintendent of the company with authority to hire and discharge employees. But they declare that he was without authority to make the contract with Grant for his services for a period of one year. The limitation of the authority of Craig to make the contract for a period of one year is not set forth in the answer as a defense. Even though the answer presented as a defense the limitation of Craig's authority, it was not attempted to be shown that Grant had information of such limitation of authority. The burden of alleging and proving the limitation of authority of Craig to enter into the contract of employment for a period of one year and notice thereof to Grant, was on the Torson Construction Company. New York Canners, Inc., v. Rucker, 238 Ky. 204, 37 S. W. (2d) 31. It neither alleged nor attempted to prove either.

Accepting the testimony of Grant, Carter, and Nielson, the contract of employment, its conditions, terms, and the period of time for which it was to extend are definite and certain and not terminable at the will of either party; nor was there lack of mutuality. The facts in Stanley v. Ky. Utilities Co., 223 Ky. 688, 4 S. W. (2d) 732, Combs v. Hazard Ice & Storage Co., 213 Ky. 29, 290 S. W. 1035, Rasnick v. W. M. Ritter Lbr. Co., 187 Ky. 523, 219 S. W. 801 (cited by the Torson Construction Company) are not comparable to those in the present case. Accepting the testimony in behalf of Grant, the present case is clearly distinguishable from L. & N. R. R. Co. v. Offutt, 99 Ky. 427, 36 S. W. 181, 18 Ky. Law Rep. 303, 59 Am. St. Rep. 467.

According to his testimony, Grant reserved, and Craig accorded him, the privilege of deciding and reporting the next day, whether he would accept the contract, its conditions, and the terms as proposed to him on the afternoon of the 16th. It is not disputed that

on the morning of the 17th Grant appeared at the place of business of the Torson Construction Company and then and there began the performance of his part of the contract. These facts take the case out of the rule that a contract that cannot be performed within a year is within the statutes of frauds. Those cases bearing on this question cited by the Torson Construction Company are not applicable and controlling when the testimony of Grant, Carter, and Nielson is considered. The execution and delivery of the check with the words "in full" written thereon were not intended by the parties to evidence a settlement between them other than of the amount for which it was given. The testimony of Craig and Torson that Craig was without authority to employ Grant for the period of one year, and that Craig made no such contract, is utterly inconsistent with the present contention that the check was intended by the parties to evidence a settlement of the claim now involved. The words "in full' were written in the check for the purpose of showing that the amount of the check was "in full" of the labor performed by Grant up to its date. To regard them otherwise is to be forgetful of the testimony of Craig and Torson.

Respecting the criticism of instruction No. 3, which endeavored to inform the jury of the measure of damages, it is technically erroneous. It is a general rule that an employee who has been wrongfully discharged is entitled to recover only an amount equal to the agreed wages, less whatever he may have earned or with reasonable diligence could have earned (Jno. C. Lewis Co. v. Scott, 14 Ky. Law Rep. 713; C. D. Smith & Co. v. Ohler, 104 S. W. 995, 31 Ky. Law Rep. 1275; Bridgeford & Co. v. Meagher, 144 Ky. 479, 139 S. W. 750; Owensboro Shovel & Tool Co. v. Moore, 154 Ky. 431, 157 S. W. 1121) in similar employment in the locality in which his services were to be performed during the remainder of the period of employment (Abrams v. Jackson County Board of Education, 230 Ky. 151, 18 S. W. (2d) 1000). In this jurisdiction the burden is on the employee to prove the amount earned, or that he could have earned by reasonable diligence during the period of the breach. Lewis Co. v. Scott, 95 Ky. 487, 26 S. W. 192, 16 Ky. Law Rep. 49, 44 Am. St. Rep. 251; Abrams v. Jackson County Board of Education, supra; Hill & Perkins v. Hager Bros., 7 Ky.

Law Rep. 519; Fuchs v. Koerner, 107 N. Y. 529, 14 N. E. 445. The rule has been asserted that, after the employee has been wrongfully discharged, he has a right to seek the same character of employment as that from which he was discharged. Simon v. Allen, 76 Tex. 398, 13 S. W. 296. If he cannot secure similar employment, then it becomes his duty to use reasonable diligence to secure other employment for which he is reasonably fitted. Kramer v. Wolf Cigar Stores Co., 99 Tex. 597, 91 S. W. 775; Perry v. Simpson Waterproof Mfg. Co., 37 Conn. 520; Simon v. Allen, supra. And if need be, at less price. Perry v. Simpson Waterproof Mfg. Co., supra. But he is not bound to mitigate the damages by accepting any sort of employment that can be procured. Wilkinson v. Black, 80 Ala. 329. Nor to look for or accept employment of another kind of a substantially different character or grade. Milage v. Woodward, 186 N. Y. 252, 78 N. E. 873; Van Winkle v. Satterfield, 58 Ark. 617, 25 S. W. 1113, 23 L. R. A. 853; Hinchcliffe v. Koontz, 121 Ind. 422, 23 N. E. 271, 16 Am. St. Rep. 403; Farrell v. School Dist. No. 2, 98 Mich. 43, 56 N. W. 1053; Fuchs v. Koerner, 52 N. Y. Super. Ct. 77. Conceding that instruction No. 3 failed to meet the requirement of these principles, notwithstanding the error in it, Grant was entitled to compensation equal to his agreed wages under the contract from the date of his discharge to the expiration of the contract, and the company was entitled only to a credit for what Grant earned or with reasonable diligence could have earned in similar employment or work of a substantially similar character. See authorities, supra.

Grant's testimony establishes that his wages under the contract with the company from the date of his discharge for the remainder of the year covered by it were $2,212.50 and that the amount he had earnel during that period was $770.50. His uncontradicted testimony demonstrates that he exercised reasonable diligence to obtain other employment, but failed to obtain it. We find his testimony in this respect corroborated by this statement in brief of the Torson Construction Company:

"During the balance of the year Grant worked for four other employers, a total of five months. This shows there was no demand for welders even for a man of Grant's recommendations."

So if instruction No. 3 was phrased as now urged by the Torson Construction Company, the jury could not have allowed it under the evidence a larger credit than has been given under the jury's verdict. Indeed the credit allowed is greater than authorized by the evidence, and, if instruction No. 3 had been written and given by the court as contended, the jury could not have allowed a larger credit than was given the construction company without further ignoring the evidence.

The giving of erroneous instructions to be grounds of reversal, it must appear affirmatively that the giving of same was prejudicial to the substantial rights of the complaining party. See sections 134, 338 and 759, Civil Code of Practice, and annotations. These sections deprive us of the power to reverse on the ground of erroneous instructions, except where the same are prejudicial to the substantial rights of the losing party.

It is earnestly and vigorously argued "it is clearly shown that it was not the intention of the parties to enter into a year's contract." If only the testimony of Craig and Torson be regarded, this argument is correct. But it overlooks the testimony of Grant, Carter, and Nielson, which convincingly shows that Grant's contract of employment was for a period of one year, beginning whenever he decided and reported that he had accepted Craig's proposition, which was on the morning of the 17th of July, at which time he entered the services of the company. The evidence was conflicting as to this issue. The jury accepted that in behalf of Grant. It believed his witnesses instead of those of the company. In the circumstances we are not authorized to disturb its findings, nor to assume its functions.

Wherefore the judgment is affirmed.