## Hoffman v. Wilson.

(Decided March 27, 1925.)

## Appeal from Allen Circuit Court.

1. **Evidence—Salesman Deliberately Signing Contract Knowing its Terms Held Bound Thereby.**—Salesman, who signed unambiguous contract to sell on commission, expenses advanced to be deducted, could not show different agreement by parol, and avoid writing on ground that he signed it as mere formality relying on employer's oral agreement.

2. **Contracts—Written Contract Supersedes Parol Negotiations when Deliberately Signed by Parties.**—When persons deliberately put their contract in writing and sign it, writing supersedes parol negotiations.

F. R. GOAD and N. G. GOAD for appellant.

W. D. GILLIAM for appellee.

OPINION OF THE COURT BY COMMISSIONER HOBSON—Reversing.

Morris Hoffman is the manufacturer of men's wearing apparel at St. Louis, Missouri, and sells his output by wholesale through traveling salesmen. J. Ward Wilson had been traveling in Texas for another manufacturer. In the latter part of September, 1921, he went to the establishment of Hoffman in St. Louis. They differ as to what occurred there. Hoffman says they agreed on the terms of the contract and he afterwards wrote out the contract as they had agreed upon it and sent it to Wilson at Memphis, Tennessee, where he signed it and returned it to Hoffman. Wilson says that Hoffman employed him for a year at a salary of $3,000.00; that Hoffman there showed him a form of contract which he refused to sign as it was strictly a commission contract; that Hoffman said that was the kind of contract all of his men signed and he didn't want to break his rule, but finally agreed to write up a contract for $3,000.00 a year, payable in installments of $250.00 a month and $75.00 a week for traveling expenses while on the road, and they agreed on that contract. He says that when the paper was sent to him in Memphis he signed it as a mere form, having confidence in Hoffman that he would do what he said. He worked for Hoffman until the following May, when Hoffman discharged him. He then brought this

suit against Hoffman to recover the balance of his salary for the year and Hoffman pleaded as a counterclaim the amount that he had received in the way of advances over and above what was coming to him under the contract. The case was submitted to the court upon depositions and judgment was rendered for the plaintiff for $325.00. The defendant appeals.

The written contract is free from ambiguity. It provides that Hoffman shall pay Wilson for his services 8% of the net amount of the goods which shall be sold by Wilson in his territory during the term of the contract. It also provides that Hoffman will advance to Wilson the amount of his actual traveling expenses, not exceeding $6.00 a day, but not more in all than $300.00, and all amounts so advanced shall be deducted by Hoffman from the amount payable to Wilson under the contract. The contract also provides that if Wilson sold less than $15,000.00 worth of goods Hoffman at any time on or after March 1, 1922, might terminate the contract. Wilson signed the contract and returned it without any objection to Hoffman. The contract was inclosed by Hoffman to him in the following letter:

"Dear Sir:

"I am hereby sending you a copy of our regulation contract. Kindly sign both the original and duplicate, and return one of the copies to me.

"On the first of every month, during the term of your contract, I will advance you $250.00, which amount will accordingly be deducted from your commissions.

"With my kindest regards and best wishes,
"Very truly yours,
(Signed) MORRIS HOFFMAN."

Hoffman did advance to Wilson $250.00 a month while he served. Wilson did not sell the amount of goods provided by the contract and so when he was discharged there was a balance due Hoffman over and above his commission. The letter which accompanied the contract strongly confirms Hoffman's testimony as to what took place between them in St. Louis. Wilson cannot avoid the effect of the written contract which he signed well understanding its provisions, on the ground that he signed it as a mere form and having confidence that Hoffman would do what he said. If such facts relieved people

from written contracts the writing deliberately executed would be of little value. When persons deliberately put their contract in writing and sign it the writing supersedes the parol negotiations.

"When parties have deliberately put their engagements into writing, in such terms as import a legal obligation, without any uncertainty as to the object or extent of such engagement, it is conclusively presumed that the whole engagement of the parties, and the extent and manner of their undertaking, was reduced to writing; and all oral testimony of a previous *colloquium* between the parties, or of conversation or declarations at the time when it was completed, or afterwards, as it would tend in many instances to substitute a new and different contract for the one which was really agreed upon, to the prejudice, possibly, of one of the parties, is rejected." 1 Greenleaf on Evidence, section 275.

"The rule is well established, in this jurisdiction, that all agreements and understandings between contracting parties are merged in the written contract, unless by the terms of the writing the parties stipulate otherwise." Taylor v. Williams, 199 Ky. 154. To same effect see United Equipment Co. v. Bohon Co., 203 Ky. 527.

It has been often held that it is no defense that a party signed the writing negligently without reading it and so did not know that the writing did not truly express the contract. Plainly the same rule must apply where the party signs the writing deliberately knowing its terms.

Judgment reversed and cause remanded with directions to enter a judgment as above indicated in favor of the defendant on the counterclaim.