## Ross Seed Co. v. Sturgis Implement & Hardware Co. et al.

June 13, 1944.

777

Allen, McElwain, Dinning & Clarke and E. R. Morton for appellant.

Barry & Simpson and Harris & Drury for appellees.

OPINION OF THE COURT BY VAN SANT, COMMISSIONER —Reversing.

Appellant, Ross Seed Company, is engaged in the business of selling farm seed, at wholesale, in Louisville, Kentucky. Appellees, C. G. Davis and Mrs. Nell S. O'Nan, administratrix of Edd O'Nan, deceased, partners doing business under the firm name and style of Sturgis Implement & Hardware Company, are engaged in the seed business in Sturgis, Union County, Kentucky. C. D. Ross, representing appellant, entered into a contract with appellees, through C. G. Davis, one of the partners, whereby appellant agreed to purchase 200,000 pounds of Korean lespedeza seed. The contract was reduced to writing on a form prepared and used by appellant in the course of its business. The contract reads:

"Ross Seed Co.
"Wholesale Dealers in Field Seeds,

N. W. Cor. 15th. & Lytle

Louisville, Ky. U. S. A.
Date Sept. 29th—42

Bot of Sturgis Imp & Hdw Co.
Post Office—Sturgis                State Ky.

hereby orders in duplicate, of Ross Seed Company the following described items on the terms and conditions set forth herein and on the reverse side hereof.

To Be Shipped To:                Louisville, Ky.
How Ship:-Rail                   When: Ready after
F.O.B. Louisville, Ky.                         Harvest.

Louisville, Ky. 1942

200,000 lb. 1942 Crop Korean To be recleaned by buyer basis No. 1 Korean 98½ Purity, not over 2 D pr oz @

3.50 cwt. and No. 2 Recleaned Seconds @ $1.50 cwt. Sax to be furnished by buyer.

"Seller—Sturgis Imp. & Hdw Co.
"By C. G. Davis

"Accepted by Home Office,
"Ross Seed Company
"By C. D. Ross"

"Terms and Conditions

"Purchaser's order must be accepted by home office of Ross Seed Co. within 5 days by mailing to buyer one of the duplicate offers duly signed by seller. Terms: Payable at time of delivery, subject to demand draft. Prices are net without discount and are not subject to revision because of market changes and are F. O. B. Louisville, Ky., unless otherwise noted.

"Bags, unless otherwise specified, are to be charged for extra and are not returnable.

"If purchaser is to 'call for' merchandise at seller's warehouse and same is not called for on date herein specified, seller, at his option, may ship such merchandise to purchaser within five days from such date, or give written notice of cancellation of this agreement of sale, or sell for buyer's account, market loss to be paid by purchaser.

"No special agreement entered into with salesman or other agents will be recognized unless noted on the original of this contract and confirmed in writing by the Ross Seed Company.

"The seller assumes no liability whatsoever for delay or failure to ship or to deliver goods caused by fire, flood, strike, or other causes beyond our control.

"The seller gives no warranty, express or implied, as to description, (including Kind, Variety and name), quality productiveness or any other matter of any seeds sold by it, and will not be in any way responsible for the crop."

The order was confirmed by appellant in the time specified under the terms and conditions. Appellees made no delivery under the contract, and on December 10, 1942, notified appellant that they might have to default in its performance. Upon appellees' failure to

deliver the seed, appellant purchased the same quantity on the open market, being required to pay therefor the sum of $4,319 in excess of the contract price. It then filed this action for damages in that amount.

Appellees did not attempt to reform the written contract, but sought to avert liability solely upon the following pleas contained in their answer and amended answer:

"The defendant further answering and traversing, says that the instrument filed with plaintiff's petition, as Exhibit A, was not the complete contract between the plaintiff and defendant, but only a memorandum of agreement; that it was within the knowledge and in the contemplation of both parties that the seed agreed to be furnished by the defendant to the plaintiff was to be harvested from that part of the area in Union County, Ky., embraced within the confines of Camp Breckinridge, and that the seed to be furnished was only such as could be raised and harvested within said area, and the defendants further say that the amount of seed to be furnished was merely an approximation and the only thing agreed upon as absolute, was the purchase price of same, to be paid therefor by the said plaintiff.

"The defendant answering further says that at the time of the memorandum, entered into between the parties, that this defendant had a contract with Young & Conway of Morganfield, Ky., to furnish said firm —————— lbs. of lespedeza seed to be raised and harvested from said area, and that at the time said plaintiff, Ross Seed Company, was informed of the contract and that same was superior and took precedence over the seed to be furnished him, under said memorandum.

"The defendant answering further says that after he furnished said Young and Conway the seed contracted to be furnished, all of which the said plaintiff was aware, known and agreed to, the said defendant was unable to harvest or procure any further seed from said area, and that by reason thereof, he was unable to and did not furnish to the said plaintiff any seed under said memorandum agreement.

"The said defendant pleads said facts as an absolute bar of said plaintiff's petition to recover anything from it.

"The defendant, Sturgis Implement & Hardware

Co., says that during the time that the seed was ready to be harvested, excessive rainfalls and floods occurred over this Camp Breckinridge area, to such an extent, that it was unable to harvest said seed, or to get them ready for market, or to furnish same to plaintiff as set out in plaintiff's petition, and this defendant pleads said causes as a bar to the plaintiff's right to recover anything in this action.''

Appellant filed motion to strike the language above quoted, upon the ground that it contradicted and varied the terms of the contract sued on. The motion was overruled, to which ruling appellant excepted. Appellant then demurred to the answer and amended answer, and to each and every allegation and paragraph thereof. The demurrer was overruled in each particular, to which exceptions were taken. Trial was had on the issue presented by the pleadings quoted, the issue having been joined by reply. Judgment was rendered in favor of appellant in the sum of $308.16. The appeal has been prosecuted from this judgment. Our conclusion in respect to the contention that the court erred in permitting appellees to interpose the defense set out in the answer and amended answer, as hereinbefore quoted, precludes the necessity of discussing other points raised for reversal.

The written contract, admittedly signed by a duly authorized agent of appellees, recites:

''No special agreement entered into with salesman or other agents will be recognized unless noted on the original of this contract and confirmed in writing by the Ross Seed Company.''

The letter confirming the contract is as follows:

''October 1, 1942

''Sturgis Implement & Hardware Co.,
''Sturgis, Ky.
''Gentlemen:

''The writer has returned to the office and now desires to confirm purchase from you of the car of No. 1 recleaned Korean, like sample given us, at $3.50 per 100 pounds, sacks included; and 100 bushels of Kentucky Red Clover as per samples lot 1 and lot 2, at $10.00 per bushel, on which new cotton bags are extra at 42c each. All of this seed is bought f. o. b. Sturgis, Ky., for prompt shipment by rail.

"In addition, we have bought from you 200,000 pounds 1942 crop Korean lespedeza, same to be re-cleaned by us at Louisville without extra charge, and settled for on the basis $3.50 per 100 pounds for No. 1 recleaned Korean, 98.50% pure, not over 2 dodder per ounce; and on the No. 2 recleaned seconds at $1.50 per 100 pounds; all f. o. b. Louisville, Ky., and the sacks are to be furnished by ourselves. We understand you will load the first car or two in your sacks and we will return same to you promptly for further use. Shipment is to be made by rail as soon as ready after harvest in the fall of 1942.

"We believe the above covers our transaction with you, and we are looking forward to additional trading as soon as you are in a position to offer us further. We are particularly interested in accumulating a little more Red Clover, and hope you will mail us samples or call us as soon as you have anything further to offer us.

"Enjoyed very much my short visit with you and am looking forward to hearing from you in the very near future.

"Yours truly,
"Ross Seed Company
"CDR.VT.                              President."

Neither the contract, nor the letter in confirmation thereof, recites that the seed was to be harvested from any particular area, or that the delivery was to be contingent upon the ability of appellees to obtain the seed from any specified source.

One of the most elementary rules in the law of contracts is, that when a contract has been reduced to writing, it will be conclusively presumed to contain the entire agreement, in the absence of a plea to reform the contract because of fraud or mutual mistake. Hoffman v. Wilson, 208 Ky. 195, 270 S. W. 788; Fairbanks-Morse & Co. v. Manning & Combs, 164 Ky. 478, 175 S. W. 1000. The contract sued on specifically states that no special agreement would be binding on appellant, unless it appeared "on the original of this contract and confirmed in writing by the Ross Seed Company." By signing the contract, appellees agreed to this condition. In order to interpose a defense based upon an agreement not contained in the written contract, it was incumbent upon appellees to plead and prove a reformation of the

contract; this was not attempted. The court, therefore, erred in permitting appellees to introduce evidence contradicting the contract as a defense to the suit. Appellees were not prevented from performing their obligation under the written contract, by reason of any cause beyond their control. It was shown that they could have purchased the seed on the open market in sufficient quantities to fulfill their obligation. Of course, in doing so, they would have incurred a loss, because the marketable value of seed increased between the time they entered into the contract and the time designated for delivery. But this hazard was assumed by them when they entered into the contract, and they cannot be excused upon this ground.

The judgment is reversed, for proceedings consistent with this opinion.